Filed 3/27/13  P. v. Agudelo CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B236696 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA114688) |
| v. | |
| ASDRUBAL AGUDELO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lori Ann Fournier, Judge.  Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent

_____

A jury convicted Asdrubal Agudelo of lewd and lascivious conduct with a child under 14 years old.  Evidence at trial included recorded telephone calls between the victim, Amy D., and Agudelo, which were initiated by police after Amy had reported the abuse to her mother.  Telling Agudelo the police had contacted her to ask questions about him, Agudelo told her to deny everything.  After he became suspicious the calls were being monitored, Agudelo denied any misconduct had occurred.  On appeal Agudelo contends the trial court erred in instructing the jury regarding adoptive admissions and abused its discretion in sentencing him to the upper term of eight years.  He also contends he received constitutionally ineffective assistance from his trial counsel.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Charges*

Agudelo was charged by amended information with two counts of lewd and lascivious conduct with a child under 14 years old (Pen. Code, § 288, subd. (a)) (counts 1 and 2),[1] forcible rape (§ 261, subd. (a)(2)) (count 3), lewd and lascivious conduct by force with a child under 14 (§ 288, subd. (b)(1)) (count 4) and aggravated sexual assault of a child under 14 years old and seven or more years younger than the perpetrator (§ 269, subd. (a)(1)) (count 5).  After counts 1 and 3 were dismissed in the furtherance of justice (§ 1385), Agudelo pleaded not guilty to the remaining counts.

2. *Summary of the Evidence Presented at Trial*

a. *The People's evidence*

Fifteen-year-old Amy testified Agudelo began dating her mother when Amy was five or six years old.  Although Agudelo and Amy's mother stopped dating in early 2007, they remained friends.  Amy continued to see Agudelo and his son, Omar, two to three times a week.  Amy called Agudelo "Pa."

In June 2007 Agudelo told Amy's mother he was going to take Amy, then 10 years old, shopping for a graduation dress.  Instead, Agudelo took Amy to his apartment where he pulled her onto the bed and penetrated her with his penis.  Agudelo

---

[1]    Statutory references are the Penal Code.

2

told Amy not to tell anyone because he would go to jail and she would never see Omar again.  Amy was afraid to tell her mother because she was very strict—she had beaten and screamed at Amy—and Amy did not think her mother would believe her.

In late 2008 Omar's mother told a social worker she should interview Amy to determine if she had been sexually abused because Amy was drawing pictures of penises and showing them to Omar.  Amy testified she denied being sexually abused at that time because she was scared and "didn't feel ready to open up."

In June 2009 Agudelo picked Amy up to play with Omar but instead took her to his apartment.  After they smoked marijuana, Omar penetrated her with his penis.  He again told Amy not to tell anyone because he would go to jail and she would never see Omar again, which saddened Amy because she felt like a sister to him.

In March 2010 Amy's mother discovered Amy had marijuana.  Amy testified, after she told her mother Agudelo had given her the marijuana, her mother "pulled together in her head that if he's giving me drugs, then most likely he's doing something with me.  So she asked me if he ever did anything with me, and I told her the truth."  Amy's mother took her to the police.  After Amy described both incidents to Los Angeles Police Detective Carlos Fernandez, Fernandez called Agudelo and arranged an interview.  Agudelo subsequently retained an attorney, who rescheduled the interview.

The day before the interview Detective Fernandez had Amy call Agudelo from the police station.  They spoke three times, and the recorded calls were played for the jury.  The transcript from the first call includes the following exchange:

"[Amy]:  Pa, it's Amy.

"[Agudelo]:  What's up?

"[Amy]:  Oh, I don't know, they came to my school and they were saying they wanted to ask me something about you.  Have you said anything to them?

"[Agudelo]:  No.  [Unintelligible.]  What's happening?

"[Amy]:  I don't know.  I'm afraid.

"[Agudelo]:  No, but what happened.  You're not telling me anything, let's see, they are going to throw me in jail.  What happened?

3

"[Amy]: But why? I didn't say anything.

"[Agudelo]: You haven't said anything?

"[Amy]: No!

"[Agudelo]: No, because they are going to throw me in jail.

"[Amy]: What shall I say if they ask me something?

[¶] . . . . [¶]

"[Agudelo]: I'm not going to say anything to your mom, no, not this. Nothing. You have to deny everything. Or won't you?

"[Amy]: But what about if they ask me if I've been with you or something.

"[Agudelo]: No, no. You say no, that I've never touched you, never, just that I've kissed you, that I've kissed you on the cheek. Or you kiss me, you greet me. Please, deny everything.

"[Amy]: What about drugs?

"[Agudelo]: Not that either . . . ."

After Amy pressed Agudelo as to what she should do if the authorities gave her a physical examination—"a sex exam, Pa"—Agudelo responded he had a copy of a letter Amy had written to Miguel Gomez, her former boyfriend, stating she had lost her virginity to him: "Everything you wrote that you, you, you gave to Miguel. Everything you wrote. I have it. Deny it to the very end, deny it. No, you can say, you can say that." Later, Amy asked, "What if I tell them that we had sex just once." Agudelo responded, "No, no, no. Don't say that, Amy, don't ever say that, not on your friggin life." "Even if you say it was just once, they'll throw me in jail for life! At once!" Amy asked, "Do I have to lie?" Agudelo responded, "Yeah." Amy confirmed, "Then should I lie?" Agudelo responded, "I don't know. I mean, how could you say oh—if—they are going to tell me—they are going to put me in jail for life if they say that I, I abused a minor, they'll put me in jail." Amy kept asking if she should lie, and Agudelo began to get suspicious, asking who was with Amy.

During the second call Amy told Agudelo the police were meeting with her mother and Amy had told the police she and Agudelo had sex once because Agudelo had

not told her what to say. Agudelo exclaimed, "Not that Amy. You can't Amy." Eventually, Agudelo asked if someone was with Amy and whether he was being recorded. Later he denied having sex with Amy or touching her. During the third call Amy kept asking Agudelo whether he wanted her to lie, and Agudelo again asked if he was being recorded. He also denied touching Amy.

    b. *The defense evidence*

Agudelo testified he loved Amy and treated her like a daughter, but she would lie to get what she wanted. In November 2009 Amy was upset Gomez had broken up with her. She wrote the letter telling Gomez he was her first sexual partner while she was in Agudelo's car. Although Amy gave the letter to Gomez, she left a draft in the car. Agudelo testified he told Amy to "deny everything" because he was worried he had left Amy unsupervised at various times, especially with Gomez, and had taken her places without her mother's consent.

Agudelo also presented the testimony of several witnesses. Gomez testified Amy and Agudelo had a father-daughter relationship, Gomez had never observed any sexual nature to their relationship and Agudelo was careful to allow Amy to be alone with Gomez only in public. A friend of Amy's from middle school testified Amy and Agudelo always interacted like a stepfather and daughter and Amy had a reputation for lying. Agudelo's sister testified she never saw Agudelo exhibit lewd intentions toward children at any of the many family gathering she had attended with him and Agudelo had a reputation for telling the truth. Dr. Hy Malinek. a clinical psychologist, testified he and another doctor who administered psychological tests did not find evidence of sexual deviance or pedophilia: If the alleged conduct had occurred, the incidents appear to have been isolated, situational and impulsive acts separated by two years.

3. *The Jury Instruction Concerning Adoptive Admissions*

The trial court informed counsel it intended to instruct the jury on adoptive admissions "because, based on my reading of the law, I have a sua sponte duty to include it if there is anything . . . the jury could find is an adoptive admission." Overruling the prosecutor and defense counsel's general objections and finding the instruction was

5

warranted "based on the evidence," the court instructed the jury with CALCRIM No. 357: "If you conclude that someone made a statement outside of court that accused the defendant of the crime or tended to connect the defendant with the commission of the crime and the defendant did not deny it, you must decide whether each of the following is true: [¶] The statement was made to the defendant or made in his presence. [¶] The defendant heard and understood the statement. [¶] The defendant would, under all the circumstances, naturally have denied the statement if he thought it was not true. The defendant could have denied it but did not. If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true. If you decide that any of these requirements has not been met, you must not consider either the statement or the defendant's response for any purpose. "

4. *The Jury's Verdict and Sentencing*

The jury found Agudelo guilty of lewd and lascivious conduct with a child under 14 years old, but was unable to reach a verdict on the remaining charges of lewd and lascivious conduct by force and aggravated sexual assault. At the sentencing hearing defense counsel contended Agudelo should be sentenced to the low term of three years. (§ 288, subd. (a).) Counsel argued several witnesses had testified Agudelo was a kind father, there were no other incidents of sexual misconduct and the psychological testing demonstrated there was a very low risk of future dangerousness.

In sentencing Agudelo to the upper term of eight years in state prison, the court explained, "Mr. Agudelo, this young girl looked to you as a father figure. She didn't have a father of her own to guide her. She had a life that was filled with turmoil based on her relationship with her mother. You took advantage of that troubled relationship. And you gained her trust by allowing her to do things that her mother didn't allow. . . . I have considered the statements by your children. It seems that you were a fabulous father to your own children, but you didn't think of what would happen based on your actions. You didn't show any remorse for your actions. When you were confronted by Amy D. during that phone call, you tried to convince her to lie to protect you. . . . This was not a

6

mere touching.  You had . . . sexual intercourse with a 12-year-old girl who looked to you and called you Pa, thought of you as her father."

**DISCUSSION**

1. *The Trial Court Properly Instructed the Jury on Adoptive Admissions*

A trial court in a criminal case has a duty to instruct on general principles of law applicable to the case (*People v. Blair* (2005) 36 Cal.4th 686, 745), that is, "'"'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'"'" (*People v. Valdez* (2004) 32 Cal.4th 73, 115.)  However, "[i]t is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  "In assessing a claim of instructional error, 'we must view a challenged portion "in the context of the instructions as a whole and the trial record" to determine "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."'" (*People v. Jablonski* (2006) 37 Cal.4th 774, 831; see *Guiton*, at p. 1130 [error in giving instruction that has no application to facts reviewed under harmless error standard in *People v. Watson* (1956) 46 Cal.2d 818].)

Agudelo contends the trial court has no sua sponte duty to instruct on adoptive admissions.  He further argues the instruction was not supported by substantial evidence because the record is clear he vehemently denied Amy's accusations.

Although it is true the trial court does not have a sua sponte duty to instruct on adoptive admissions, it "may certainly instruct on the matter if [it] think[s] it best to do so." (*People v. Carter* (2003) 30 Cal.4th 1166, 1198.)  Moreover, contrary to Agudelo's characterization of the record, the trial court properly determined the instruction was warranted by the evidence.  During the first call with Amy, before he became suspicious it was being recorded, Agudelo repeatedly told Amy to deny the accusations, but did not deny them himself.  Indeed, at the outset of the conversation, when Amy simply told Agudelo the police wanted to ask her something about Agudelo, he twice responded he would be thrown in jail.  In addition, when Amy suggested she tell the police she and

7

Agudelo "had sex just once," his response, far from being a denial of his criminal acts, was virtually an admission: "Even if you say it was just once, they'll throw me in jail for life!" While Agudelo may have later denied the accusations, that initial exchange was sufficient evidence to warrant the instruction. It was well within the province of the jury to decide whether Agudelo was telling the truth when he later explained he simply was afraid he would get in trouble for failing to properly supervise Amy.

2. *Agudelo Has Forfeited His Claim of Sentencing Error*

Courts have broad sentencing discretion, and we review a trial court's sentencing choices for abuse of that discretion. We will reverse a sentence only if there is a clear showing it was arbitrary or irrational. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582-1583.) A trial court abuses its discretion if it relies upon circumstances that are not relevant to, or that otherwise constitute an improper basis for, the sentencing decision. (*Sandoval*, at p. 847; *Moberly*, at p. 1196.)

Under section 1170, subdivision (b), when a statute specifies three possible terms, choice of the appropriate term rests within the trial court's discretion. The court may consider the record in the case, the probation report, evidence introduced at the sentencing hearing and "any other factor reasonably related to the sentencing decision" (California Rules of Court, rule 4.420(b)),[2] and "shall select the term which, in the court's discretion, best serves the interests of justice" (§ 1170, subd. (b)). The existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 816; *People v. Osband* (1996) 13 Cal.4th 622, 728.)

Here, the trial court identified as aggravating factors Amy's vulnerability and the fact Agudelo took advantage of a position of trust and confidence to commit the offense. (Rule 4.421(a)(3) and (a)(1).) Agudelo does not contest these factors. Rather, he contends the very nature of lewd conduct with a child implicates a particularly vulnerable

---

[2]    References to rule or rules are to the California Rules of Court.

victim and some violation of a position of trust, thus they are not "particularly egregious factors" that make one form of the offense worse than another. (See *People v. Moreno* (1982) 128 Cal.App.3d 103, 110 ["essence of 'aggravation' relates to the effect of a particular fact in making the offense distinctively worse than the ordinary"].) Agudelo also argues the trial court failed to consider mitigating factors and "additional criteria reasonably related" to the sentencing choice (rule 4.408), including that he had exercised caution so no harm was done or threatened against Amy (rule 4.423(a)(6)); he only took advantage of her twice over a several-year period; he was gainfully employed and supported his family; one of his son's testified what an important influence Agudelo had been on his life; several friends and professional associates vouched for his honesty, dependability and work ethic; and the psychological reports found him to be low risk for future offense.

Agudelo has forfeited his claim of error by failing to object at the time of sentencing that the court had not fully considered all relevant factors. "Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.'" (*People v. French* (2008) 43 Cal.4th 36, 46.) This forfeiture (waiver) doctrine applies to claims the trial court failed to properly make a discretionary sentencing choice. (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"]; see *People v. Tillman* (2000) 22 Cal.4th 300, 303 [People's failure to object to trial court's failure to state on the record its reasons for not imposing a restitution fine forfeited claim on appeal].) As the Supreme Court explained in *Scott,* "[T]he waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular cases, and case in which the court purportedly erred because it double-counted a particular

9

sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons. [¶] . . . Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Scott,* at p. 353.)

Agudelo contends he did not forfeit his sentencing claim because he presented to the trial court the factors he believed warranted a low term. To be sure, Agudelo identified some of those factors—the testimony he had been a good father and the results of the psychological test indicating he was at low risk for reoffending—but, he did not argue the aggravating factors found by the court were inherent in any case of lewd conduct with a child under 14, an argument palpably without merit in any event. Additionally, he did not identify one of the mitigating factors he now urges on appeal, which is the basis for his ineffective assistance of counsel claim, that he exercised caution not to harm Amy and no physical harm was done or threatened (rule 4.423(a)(6)). Moreover, the court did assess all the factors Agudelo presented to it, stating, "I have read and considered the probation report filed in this case, the Static 99 assessment [finding minimal risk of sexual recidivism] and the sentencing memos by both parties."

### 3. *Agudelo Has Failed To Demonstrate His Counsel Was Ineffective for Failing To Argue Amy Was Not Harmed as a Mitigating Factor*

To escape the forfeiture doctrine, Agudelo contends his counsel was constitutionally ineffective in failing to argue as a mitigating factor Amy was neither harmed nor threatened (rule 4.423(a)(6)). To establish ineffective assistance of counsel, a defendant must demonstrate that "(1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more

10

favorable to the petitioner." (*In re Neely* (1993) 6 Cal.4th 901, 908; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 686 [104 S.Ct. 2052, 80 L.Ed.2d 674].) "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter.'" (*People v. Karis* (1988) 46 Cal.3d 612, 656.) There is a presumption the challenged action "'might be considered sound trial strategy'" under the circumstances. (*Strickland,* at p. 689; accord, *People v. Dennis* (1998) 17 Cal.4th 468, 541.)

On direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission. (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see *People v. Mitcham* (1992) 1 Cal.4th 1027, 1058 ["'[i]f the record sheds no light on why counsel acted or failed to act in the manner challenged, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" [citation], the contention [that counsel provided ineffective assistance] must be rejected'"].) Here, the rational tactical purpose for counsel's failure to argue Agudelo did not harm or threaten to harm Amy as a mitigating factor is obvious. As the trial court observed, "This was not a mere touching. [Agudelo] had complete . . . sexual intercourse with a 12-year-old girl . . . ." Although Amy did not suffer great bodily injury and was not found to be the victim of forcible acts of sexual abuse, to suggest she was not harmed by Agudelo is absurd. (See *People v. Simpson* (1979) 90 Cal.App.3d 919, 926 [fact that defendant might have inflicted more harm than he did does not mean a circumstance in mitigation exists]; cf. *People v. Thomas* (1992) 2 Cal.4th 489, 531 [failure to make meritless objection does not constitute ineffective assistance of counsel].) Counsel wisely chose to focus on the evidence suggesting Agudelo's behavior was aberrational instead of attempting to minimize the severity of the crime, which would have displayed a lack of contrition.

**DISPOSITION**

The judgment is affirmed.


                                        PERLUSS, P. J.


We concur:


        ZELON, J.


        JACKSON, J.


12