Filed 7/19/13  P. v. Wade CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056136 |
| v. | (Super.Ct.No. FBA1000793) |
| WILLIAM EARL WADE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Victor R. Stull, Judge.  Affirmed.

John D. O'Loughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

# INTRODUCTION

On December 9, 2010, an information charged defendant and appellant William Earl Wade with criminal threats under Penal Code section 422 (count 1), and dissuading a witness from testifying under Penal Code section 136.1, subdivision (a)(1), (count 2). The information also alleged that defendant had suffered a prior conviction under Penal Code sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i).

On December 21, 2010, defendant pled not guilty to all counts. On February 4, 2011, jury trial commenced. On February 15, 2011, defendant's motion pursuant to Penal Code section 1118.1, to dismiss count 1, was denied. On February 16, 2011, the jury found defendant guilty on both counts, and on March 25, 2011, defendant admitted the prior allegation charged in the information.

On April 22, 2011, the trial court denied probation and sentenced defendant to prison for six years as follows: on count 1—the upper term of three years, doubled under Penal Code section 1170.12; and count 2—365 days in county jail to run concurrent to count 1. The court ordered defendant to pay various fines and fees, and awarded defendant 285 days of credit for time served.

After a timely notice of appeal was not filed on defendant's behalf, we granted defendant's petition for habeas corpus to establish constructive timely filing of a notice of appeal.

**STATEMENT OF FACTS**

Debra Harper lived with her fiancé (defendant) and their child in a trailer in Barstow. Defendant owned the trailer and held the lease at the trailer park.

On May 29, 2010, Harper and defendant had been drinking with neighbors and Harper passed out. When she woke up, defendant was standing over her with a pipe. Harper had injuries to her head and elbow, and there was blood on her and the pipe, but she did not see any blood on defendant. Harper jumped up, started screaming and running, called the police, and locked herself in the bathroom with her child. Harper assumed that defendant hit her with the pipe while she was sleeping.

Barstow Police Officers D'Andrea and Silva responded to the 911 call. Officer D'Andrea contacted Harper, who was bleeding profusely and had contusions on her head, arm, and leg. The officers asked defendant to come out of the residence; he complied. Officer Silva questioned defendant. Officer D'Andrea spoke with Harper inside. Harper was shaken and in fear for her life. She told Officer D'Andrea that she had been assaulted by defendant with a metal pipe, which she showed him. She said that defendant told her that if the police were involved, "he would slit her throat."

Defendant was arrested. Harper testified at defendant's trial, and defendant was eventually acquitted.

While defendant was in jail, Harper sold his truck. When defendant returned to the residence, after being released from jail, he found out that his truck had been sold. This upset defendant. Harper testified that defendant "kept getting on [her] nerves" about the truck, and she "was just trying to put him back in jail." She admitted calling 911 on

3

several occasions, "almost every day." Harper admitted that her 911 calls were "prank calls" because she "needed [defendant] to get away from [her]."

Harper testified that she called the Barstow Police Department and spoke to a dispatcher named "Dorothea." She told the dispatcher that defendant was harassing her. She stated that she had put defendant in jail for spousal abuse, and that she "lied on the witness stand" because defendant convinced her that "everything was going to change" once he was released from jail. Harper eventually pled guilty to perjury for lying at defendant's trial.

Harper also testified that she spoke to "Victoria in Victorville" about being relocated to a domestic violence shelter. Harper wanted to relocate because defendant was giving her a hard time about the truck.

Barstow Police Officer Nevarez responded to Harper's 911 calls on August 31 and September 4, 2010. On each occasion, Harper asked the officer to make defendant leave. Officer Nevarez determined that there had been nothing but a verbal argument and explained to Harper that defendant had not done anything wrong; hence, there was no probable cause to arrest him or make him leave.

On September 7, 2010, Harper and defendant were preparing to move. Some of Harper's belongings were in the front yard and defendant wanted Harper to bring the items in the house. Harper told defendant that it was too hot outside and that she was going to wait until it was cooler outside. Harper was talking on the telephone to her son. Defendant told her to "'get your ass up, go out there and put [the] clothes away. Unplug that phone. Don't talk on the phone all day long.'"

4

Harper's son testified that as he was talking to his mother on the telephone, defendant and his mother began to argue. He heard defendant tell Harper, "'Bitch, you working on another ass whooping. Don't make me finish what you started.'" Then the telephone line went dead. The son tried to call Harper back, but the call went directly to voicemail. The same thing happened when Harper's son tried calling her on her cell phone. The son then called the police.

Officer D'Andrea and Corporal Torro responded to the 911 call. Officer D'Andrea testified that he positioned himself outside the residence, beneath a window, and listened to a loud argument between defendant and Harper. He heard Harper say that she was going to take "letters to the District Attorney's Office." Defendant told Harper to "go outside and pick everything up." Harper yelled, "'You're not going to keep man-handling me,'" and said that she was "going to involve the police." Defendant responded, "'They're not going to believe you. You're not credible. You lie.'" Defendant then stated, "'Bitch, I'll smack your face off.'"

At that point, the officers entered the residence. Defendant was asked to step outside with Corporal Torro; he complied. Officer D'Andrea entered the residence and spoke with Harper alone. The officer recorded Harper's entire statement. There were no indications that Harper was under the influence of alcohol or drugs. Harper appeared afraid, but there were no physical injuries to her or damage to the trailer. Harper was upset with defendant about how she was being treated.

Harper then gave Officer D'Andrea two letters. Harper testified that while she was visiting defendant in jail, he showed her two letters through the glass partition of the

5

jail. At that time, Harper looked at the letters, but denied reading them. The letters urged Harper to get a notarized statement of retraction of her charges against defendant. Harper testified that she never read the letters in jail; however, she did read the letters after defendant returned home after being acquitted and released from jail.

Harper told Officer D'Andrea that she was on the phone with her son. Defendant got upset with her; he told her to get off the phone and go outside to pick things up. Defendant unplugged the phone and ripped the jack out of the wall. Harper testified that she told Officer D'Andrea that defendant was bragging because he "beat the case." Harper denied lying on the stand to protect defendant and denied helping defendant "beat the case."

Harper told Officer D'Andrea that defendant said, "'I might as well finish what I started. . . . [Y]ou keep calling your family. They're not going to make it on time. You'll be dead before they get here.'"

On the witness stand, Harper denied that defendant told her that he was going to finish what he started, and she denied telling Officer D'Andrea that as well. Harper testified that she did not believe that the officers could have heard anything clearly with the air conditioner running, music playing, the TV on, and the two of them yelling at each other. Harper also denied telling the officer that defendant told her, "[t]he police aren't going to make it in time." She did admit telling Officer D'Andrea that she was in fear for her life because she was trying to get rid of defendant.

6

**ANALYSIS**

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. On April 29, 2013, defendant submitted a 17-page typewritten brief. In his supplemental brief, defendant claims that: (1) the trial court abused its discretion under Evidence Code section 352; and (2) the trial court erred in sentencing defendant to the upper term. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error.

1. <u>Evidence Code Section 352</u>

First, we address defendant's Evidence Code section 352 argument. In this case, the prosecutor presented photographic exhibits from a prior domestic violence incident, which had resulted in an acquittal. Defendant, in essence, argues that the probative value of the photographs was not outweighed by the prejudicial effect of the jury seeing these photographs.

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion

7

'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.) "That discretion is only abused where there is a clear showing the trial court exceeded the bounds of reason, all circumstances being considered." (*People v. Martinez* (1998) 62 Cal.App.4th 1454, 1459.)

Here, the jury heard testimony about and saw photographs from the May 29, 2010, incident. Exhibits 6, 8, and 9 were pictures showing Harper with her injuries. Exhibit 7 was a picture of the pipe used to inflict the injuries. Defendant "does not dispute the probative value of the Evidence Code [section] 1109 evidence, in fact the evidence would have been welcomed to the extent it provided a foundation of credibility and the incompatibility of [defendant] and Ms. Harper." We agree with defendant.

The probative value of the photographs was high. Here, defendant was charged with making criminal threats and dissuading a witness. At trial, Harper tried to change her prior statements and stated that defendant neither harmed her nor threatened to harm her. She simply wanted to put him in jail because he was getting on her nerves. The photographs, however, showed evidence to the contrary. The evidence was highly probative.

On the other hand, the evidence was not unduly prejudicial. ""The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues."' [Citation.]" (*People v. Miller* (2000) 81 Cal.App.4th 1427, 1449.)

8

Here, the pictures were not so inflammatory that it might have caused the jurors to be distracted from their main task of evaluating guilt in the current case or to be tempted to convict or punish defendant for his prior misconduct.  In this case, there was ample testimony from officers at the scene and from Harper's son to corroborate Harper's own statements before trial that defendant made criminal threats.  The evidence was simply used to challenge Harper's credibility at trial.

In balancing the probative versus the prejudicial value of the admitted evidence, we find that the trial court did not abuse its discretion.  The trial court properly concluded that the potential for prejudice was outweighed by the probative value of the evidence.

2.  Defendant's Sentence

Next, defendant contends that the "trial court erroneously found aggravating factors when it applied the high term."  In short, defendant contends that the trial court's imposition of the upper term on count 1—using the May 29, 2010, incident as an aggravating factor—was erroneous.

"The midterm is statutorily presumed to be the appropriate term unless there are circumstances in aggravation or mitigation of the crime.  [Citations.]" (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582-1583.)  "'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms" [citation] . . . .  We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational.'" (*Id*. at p. 1582.)  Moreover, "[A] single factor in aggravation suffices to support an upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 730, distinguished on other grounds by *People*

9

*v. Lucero* (2000) 23 Cal.4th 692, 714.) The trial court need not explain its reasons for rejecting mitigating factors. (*People v. Avalos*, at p. 1583.)

In this case, at the sentencing hearing, defense counsel argued that the May 2010 incident could not be used as an aggravating factor since defendant had been acquitted in that matter. Contrary to defendant's assertion, the trial court agreed with defense counsel. The court stated: "With respect to the reference in the probation report to the prior case, I do agree with you. And in fixing the term that I have decided to impose in this case, I disregard it because I don't think it is appropriate." Hence, the trial court did not use the acquitted offense as an aggravating factor. Instead, the trial court, in sentencing defendant to the upper term, stated that it was doing so because defendant threatened violence and because defendant's prior offenses were numerous and indicated a pattern of increasing violence.

Based on the above, we do not find the court's sentencing decision arbitrary or irrational. There was no abuse of discretion.

We have conducted an independent review of the record and find no arguable issues.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

11