[No. G016193. Fourth Dist., Div. Three. July 31, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIO CESAR AVALOS, Defendant and Appellant.

**COUNSEL**

Stephan A. DeSales and Jacqueline Goodman for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and Nancy L. Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, J.**—Defendant pleaded guilty to violations of Health and Safety Code[1] sections 11378, 11379, subdivision (a), and 11383, and admitted enhancements under section 11370.4, subdivision (b)(1) and (3). He appeals on several grounds.

First, defendant challenges the trial court's denial of his motion for sanctions for failure to preserve certain evidence. We conclude that, since this claim is based on an alleged violation of due process, defendant waived it by his guilty plea.

Defendant also attacks the denial of his motions to suppress evidence seized from a truck after the police detained him and obtained his consent to search the vehicle, and to quash and traverse two search warrants which resulted in the seizure of additional contraband. We conclude the detention was reasonable and his consent was voluntary, although the police were less than candid about the object of the search. We also reject defendant's attacks on the search warrants. Finally, we reject defendant's complaint about his sentence, except that we modify it to stay execution on three counts.

### FACTS

At the suppression hearing, Anaheim Police Officer David Severson testified that he learned from a confidential informant, who had previously given the police accurate information, that a number of persons were using a designated apartment in a methamphetamine operation. One of the persons using the apartment was described as a tall male Hispanic in his mid- to late 20's with a medium build. While Severson and other officers surveilled the apartment, defendant, who fit the description given to Severson, arrived at the apartment complex driving a white pickup truck. After getting out of the truck, defendant looked around the area and entered the apartment.

Severson contacted the informant by cellular telephone. The informant identified defendant by name and said defendant used the truck to store and distribute methamphetamine.

Defendant, carrying a box, left the apartment and returned to the truck. The police followed him to a commercial storage business where they saw defendant leave a storage unit, carrying a smaller yellow and black box,

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

which he placed in the truck. Defendant locked the unit and left, still followed by the police.

Severson directed a uniformed officer to stop defendant. Once stopped, defendant could only produce a telephone calling card as identification. The police determined his driver's license had been suspended.

Since defendant understood little English, a Spanish-speaking officer was called to the scene. At Severson's request, the officer told defendant he had been stopped as part of a burglary investigation and the police wanted permission to search the truck for stolen property "in addition to some other contraband." The police gave defendant a consent-to-search form, written in Spanish, which he reviewed. Defendant said he understood the form and signed it. Severson entered the truck, retrieved the box, and discovered it contained five pounds of methamphetamine. Defendant also carried a cellular telephone and a business card and entry code for the storage business. The detention lasted approximately 25 minutes.

The police sought search warrants for the apartment and the storage unit supported by two identical affidavits signed by Investigator Cindy Cederblad. She declared: "During the past 30 days, your affiant received information from a confidential reliable informant that a male Hispanic, age in his mid-20's, was involved in the transportation and sales of narcotics from . . . [the apartment] . . . . During those 30 days a surveillance was conducted intermittently." Cederblad summarized the surveillance team's observations of defendant at the apartment and the storage unit, but did not mention Severson's telephone contact with the informant. She then stated, "Sergeant Severson told your affiant that a probable cause traffic stop was . . . initiated," resulting in "contact . . . with [defendant], where he was . . . identified . . . , and a signed consent form was obtained . . . to search the . . . truck." Cederblad also summarized the results of the search. A magistrate issued the search warrants which resulted in the discovery of additional methamphetamine and drug-related paraphernalia.

Defendant moved to suppress the evidence obtained from the truck and to quash and traverse the search warrants under Penal Code section 1538.5. Before these motions were heard, the defense learned the police had lost the box retrieved from the truck during the initial search. Defendant then filed a motion to sanction the prosecution by deleting any reference to the box in the search warrants' supporting affidavits. The trial court denied the motions.

## Discussion

### 1. *The Motion for Sanctions*

 Defendant objects to the trial court's denial of his motion for sanctions for failure to preserve the box found in his truck. The issue is not cognizable on this appeal.

The right to object to a failure to preserve evidence is protected by due process under the Fifth and Fourteenth Amendments. (*California v. Trombetta* (1984) 467 U.S. 479, 488-491 [81 L.Ed.2d 413, 421-424, 104 S.Ct. 2528]; *People v. Wakefield* (1987) 194 Cal.App.3d 67, 68-69 [239 Cal.Rptr. 277].) Motions to suppress evidence under Penal Code section 1538.5 are restricted to Fourth Amendment issues. (*People v. Campa* (1984) 36 Cal.3d 870, 885 [206 Cal.Rptr. 114, 686 P.2d 634]; *People v. Wakefield, supra,* 194 Cal.App.3d at p. 69.) Such motions survive a guilty plea by statutory authorization. (Pen. Code, § 1538.5, subd. (m).) Due process claims, by contrast, focus on the guilt or innocence of the accused which are waived by the entry of a guilty plea. (*People v. Jones* (1995) 10 Cal.4th 1102, 1109 [43 Cal.Rptr.2d 464, 898 P.2d 910]; *People v. Wakefield, supra,* 194 Cal.App.3d at p. 70.)

Defendant argues *People v. Aguilar* (1985) 165 Cal.App.3d 221 [211 Cal.Rptr. 333] and *People v. Swearingen* (1978) 84 Cal.App.3d 570 [148 Cal.Rptr. 755] permit an appeal from the denial of a sanctions motion. *Swearingen* did not address the issue. (*People v. Belleci* (1979) 24 Cal.3d 879, 888 [157 Cal.Rptr. 503, 598 P.2d 473] [a case is never authority for a proposition not considered].) *Aguilar* does support defendant's position, but it is contrary to the weight of authority. (*People v. Wakefield, supra,* 194 Cal.App.3d at pp. 69-71; *People v. Halstead* (1985) 175 Cal.App.3d 772, 778-782 [221 Cal.Rptr. 71]; *People v. Bonwit* (1985) 173 Cal.App.3d 828, 831-832 [219 Cal.Rptr. 297]; *People v. Galan* (1985) 163 Cal.App.3d 786, 796 [209 Cal.Rptr. 837]; *People v. Ahern* (1984) 157 Cal.App.3d 27, 32 [204 Cal.Rptr. 11].) We find the reasoning of these cases more persuasive.

### 2. *The Detention and Search of the Truck*

 Defendant attacks his initial detention by the police and the subsequent search of his truck. We reject each of his arguments.

Defendant claims he was illegally stopped by the police. "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the

totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People* v. *Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982]; see also *People* v. *Glaser* (1995) 11 Cal.4th 354, 363, 368-369 [45 Cal.Rptr.2d 425, 902 P.2d 729].) Police may detain a suspect based on information received from a known informant. (*Adams* v. *Williams* (1972) 407 U.S. 143, 146-147 [32 L.Ed.2d 612, 617, 92 S.Ct. 1921].) Even where the police receive information from an anonymous source, if independent police investigation establishes sufficient indicia of reliability for the tip, a temporary investigative detention is permissible. (*Alabama* v. *White* (1990) 496 U.S. 325, 331-332 [110 L.Ed.2d 301, 310, 110 S.Ct. 2412]; *People* v. *Ramirez* (1996) 41 Cal.App.4th 1608, 1614 [49 Cal.Rptr.2d 311].)

The police had sufficient grounds to detain defendant temporarily. Severson testified the informant was known to the police and had previously furnished accurate information. The informant told Severson several persons were using a designated apartment in a methamphetamine operation. Defendant fit the description of one of the participants. When defendant appeared at the apartment complex, he scouted the area before entering the apartment. Severson then contacted the informant, who not only identified defendant by name, but said defendant used the truck for narcotics activity. The police saw defendant carry a box from the apartment, drive to the self-storage business and retrieve another box from the storage unit. This information was more than enough to temporarily detain defendant.

Defendant argues he was detained for an unreasonable length of time. Whether an investigatory detention was unduly prolonged turns on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (*United States* v. *Sharpe* (1985) 470 U.S. 675, 686 [84 L.Ed.2d 605, 616, 105 S.Ct. 1568]; see also *People* v. *Dasilva* (1989) 207 Cal.App.3d 43, 50 [254 Cal.Rptr. 563].) The detention was extended for an additional 15 to 20 minutes because of the need to obtain a Spanish-speaking officer to communicate with defendant. Under these circumstances, we reject the claim that the length of the detention was unreasonable.

Nor can defendant reasonably argue the use of a ruse by the police in seeking permission to search the truck rendered his consent involuntary. A search conducted pursuant to consent "is a constitutionally permissible and wholly legitimate aspect of effective police activity." (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 228 [36 L.Ed.2d 854, 863, 93 S.Ct. 2041].) "In situations [such as the present one] where the police have some

evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence." (*Id.* at p. 227 [36 L.Ed.2d at p. 863].)

Of course, the consent must be freely and voluntarily rendered and not be the product of police coercion. (*Schneckloth* v. *Bustamonte, supra,* 412 U.S. 218, 227-234 [36 L.Ed.2d 854, 862-867].) Whether a particular consent is voluntary depends on the totality of the circumstances; no single factor is dispositive of this factually intensive inquiry. (*Ibid.*) Thus, while police deception as to the purpose of the search is relevant in assessing a suspect's consent, it cannot be analyzed in a vacuum without reference to the surrounding circumstances. (*Ibid.*; see also *United States* v. *Watson* (1976) 423 U.S. 411, 424-425 [46 L.Ed.2d 598, 609, 96 S.Ct. 820]; *U.S.* v. *Barahona* (8th Cir. 1993) 990 F.2d 412, 417].)

Professor LaFave amplifies this point in his respected treatise on Fourth Amendment jurisprudence: "[A]t least since *Schneckloth* . . . , it cannot be said that . . . deception [as to the purpose of the search] is inherently incompatible with consent, for in *Schneckloth* the Court adopted the voluntariness test from the coerced confession cases, which has not been deemed to compel the exclusion of statements obtained by police misrepresentation of the crime under investigation. Nor can it be said that this particular type of deception, misrepresentation of the crime under investigation by one known to be a police officer, is as threatening to the general public's feelings of security and privacy as certain other misrepresentations, such as an officer posing as a meter reader. Unlike the latter form of deception, a misrepresentation of the crime under investigation is likely to produce a consent which would otherwise be refused only from a person who is guilty of the undisclosed crime." (3 LaFave, Search & Seizure: A Treatise on the Fourth Amendment (3d ed. 1996) § 8.2(n), p. 710, fns. omitted.)

 Here, the police actually offered a dual purpose for searching defendant's truck. They said they wanted to look for stolen property, which was clearly not the case. But they also disclosed they were looking for "other contraband," which was entirely accurate and reasonably alerted defendant the object of the search would include narcotics. The officers were also careful to ensure defendant's consent was voluntary. Once it became clear defendant had difficulty understanding English, Severson summoned a Spanish-speaking officer to assist him. Defendant was also given a Spanish-language consent-to-search form, which he read and signed. He was not under arrest, physically restrained, or threatened in any manner.

These facts stand in stark contrast to cases that have criticized the use of misrepresentations by the police to conduct searches for contraband. For

example, in *People* v. *Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], the police suspected Reeves of possessing narcotics but lacked probable cause to search his hotel room. The police had the hotel manager phone Reeves and falsely tell him a package he was expecting had arrived. When Reeves opened the door to retrieve the package, the police peeked inside and saw a marijuana cigarette. The Supreme Court found this tactic patently illegal, stating, "It is well settled by both federal and state decisions that 'an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid' [citations]." (*Id.* at p. 273.)

In *Reeves*, the misrepresentation induced the defendant to surrender his privacy rights. Other cases disapproving of the use of subterfuge involve situations where the police misrepresented their status as peace officers or permitted someone else to make such a misrepresentation. (*People* v. *Mesaris* (1970) 14 Cal.App.3d 71, 75 [91 Cal.Rptr. 837] [plainclothes officers came to the door and sought permission to enter for the alleged purpose of visiting an appliance repairman on the premises]; *In re Robert T.* (1970) 8 Cal.App.3d 990, 993 [88 Cal.Rptr. 37] [plainclothes officer had landlord introduce him as "My friend, Joe" and had landlord ask for consent to check the apartment]; *People* v. *Miller* (1967) 248 Cal.App.2d 731, 736-737 [56 Cal.Rptr. 865] [police officer had apartment manager identify him as "a caller"]; *People* v. *Hodson* (1964) 225 Cal.App.2d 554, 557-558 [37 Cal.Rptr. 575] [officer identified himself as the apartment manager].)

Here, however, the police were properly identified as such and merely made a partial misrepresentation concerning the object of the search. The misrepresentation did not disguise either the fact the police wanted to search the truck or the scope of the proposed search. Whether the police were looking for stolen property or narcotics, they certainly would have discovered the five-pound package of methamphetamine behind the driver's seat in the truck. Thus, in view of the totality of the circumstances, it cannot be said the police materially misled defendant as to the privacy rights he was surrendering. Nor can it be said the consent was involuntary.

3. *The Motions to Quash and Traverse the Search Warrants*

Defendant next attacks the trial court's denial of his motions seeking to quash and traverse the search warrants. He contends the court erred by relying on the exclusionary rule's good faith exception to deny the motion to quash. (*United States* v. *Leon* (1984) 468 U.S. 897, 900 [82 L.Ed.2d 677, 684, 104 S.Ct. 3405].) In denying the motion, the trial judge stated, "I would say that it is reasonably apparent to me that there is not sufficient grounds to detain this person based on what's presented here. However, I wouldn't say

that it is so clear [to] a police officer . . . that there's not sufficient grounds to detain this person."

It is not necessary for us to resolve this issue because we disagree with the trial court's conclusion the affidavit failed to support the detention. ▮ The police may temporarily detain a suspect based on information received from a reliable informant. (*Adams* v. *Williams*, *supra*, 407 U.S. 143, 146-147 [32 L.Ed.2d 612, 617).) Here, the supporting affidavit declared, in conclusory fashion, that the confidential informant was "reliable." But even if we treat the informant as one whose veracity had not been previously established, the independent corroboration of the informant's tip by the police, plus their own observations of defendant's subsequent activity as described in the affidavit, sufficed to support the detention. (*Alabama* v. *White*, *supra*, 496 U.S. 325, 331-332 [110 L.Ed.2d 301, 309-310]; *People* v. *Ramirez*, *supra*, 41 Cal.App.4th at p. 1614.) "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. [Citation.]" (*Alabama* v. *White*, *supra*, at p. 330 [110 L.Ed.2d at p. 309].) "Corroboration of an anonymous tip can take several forms. For example, ' "[e]ven observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light. . . ." ' [Citations.] . . . . Other forms of corroboration include the verification of detail provided by the informant through the officer's observations. . . ." (*People* v. *Ramirez*, *supra*, 41 Cal.App.4th at pp. 1616-1617.)

▮ The police were told the apartment had been used for the sale and transportation of drugs during the month before the police saw defendant at the apartment. He fit the description of a person the informant said was involved in the narcotics activity. Defendant scouted the area before entering the apartment. He left after only a few minutes carrying a box and proceeded to a storage unit where the police saw him place another box in his truck. While the police may not have been able to arrest defendant based on this information it did authorize them to detain him temporarily.

The mere fact the trial court relied on the exclusionary rule's good faith exception in denying the motion to quash is irrelevant. On appeal, a correct decision must be affirmed even if the trial court based its ruling on an erroneous reason. (*People* v. *Thompson* (1990) 221 Cal.App.3d 923, 940, fn. 4 [270 Cal.Rptr. 863]; *People* v. *Hobbs* (1987) 192 Cal.App.3d 959, 963 [237 Cal.Rptr. 742].) We conclude the trial court's denial of the motion to quash was correct.

On the motion to traverse, defendant argues the trial court erred by denying his request to question Cederblad concerning certain factual omissions in her affidavit. The trial court denied this request and the motion, declaring, "I don't find those omissions are material. I don't find in any way that they distort what would otherwise be presented in the affidavit as facts, so that the other facts set forth in the affidavit become false or misleading, and I find in any case even if they were material and they were added back in that there would be sufficient probable cause anyway . . . ."

This ruling was correct. In *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674], the Supreme Court held a criminal defendant could challenge the veracity of an affidavit used to procure a search warrant where a showing is made the affidavit included a deliberate or recklessly made material factual misrepresentation or omission. But "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Allegations of negligence or innocent mistake are insufficient. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled . . . to his hearing. Whether he will prevail at that hearing is, of course, another issue." (*Id.* at pp. 171-172 [57 L.Ed.2d at p. 682].) "When material information has been intentionally omitted from a warrant affidavit, the proper remedy is to restore the omitted information and reevaluate the affidavit for probable cause. [Citations.]" (*People* v. *Sousa* (1993) 18 Cal.App.4th 549, 562-563 [22 Cal.Rptr.2d 264].)

Defendant made no showing whatsoever that Cederblad deliberately omitted any facts from her affidavit or did so with reckless disregard for the truth. (See *People* v. *Wilson* (1986) 182 Cal.App.3d 742, 747-748, 751 [227 Cal.Rptr. 528].) Furthermore, as the trial judge noted, if the omitted information were added to the affidavit it would still support a finding of probable cause. The defense noted Cederblad's affidavit failed to inform the magistrate that the confidential informant had told Severson, not her, several people, not merely one male Hispanic, were involved in the sale and transportation of drugs from the apartment; that the police employed a ruse to obtain defendant's consent to search the truck; and that since defendant only spoke Spanish, the police needed an interpreter to obtain his consent to the search. The affidavit did correctly advise the magistrate the informant gave the police a description of one of the participants which fit defendant.

Severson also testified that when contacted by telephone during the surveillance the informant identified defendant by name and stated he used the truck for narcotics activity. As previously discussed, the use of a ruse to obtain defendant's consent to search the truck did not violate defendant's rights. The suggestion that the police acted improperly by requesting the assistance of a Spanish language officer to communicate with defendant is specious. The use of an interpreter under these circumstances was not only proper but commendable. Thus, we agree the omissions identified by defendant in this case were irrelevant and the trial court properly denied the motion to traverse. (*Franks* v. *Delaware*, *supra*, 438 U.S. 154, 172, fn. 8 [57 L.Ed.2d 667, 682]; see *People* v. *Wilson*, *supra*, 182 Cal.App.3d 742, 748.)

4. *Sentencing*

■ Finally, defendant challenges his sentence on two grounds. He contends the trial court erred by imposing the midterm for the primary offense, and the sentence imposed violates Penal Code section 654.

Defendant pleaded guilty to one count of transportation of methamphetamine (§ 11379, subd. (a) [truck]), three counts of possession of methamphetamine for sale (§ 11378 [truck, apartment and storage unit]), and one count of possession of ephedrine with intent to manufacture methamphetamine (§ 11383 [storage unit]). He also admitted enhancements for possessing over one kilogram of methamphetamine (§ 11370.4, subd. (b)(1) [counts one, two and three]) and possessing over ten kilograms of methamphetamine (§ 11370.4, subd. (b)(3) [count four]). At the same time, he pled guilty to possessing cocaine (§ 11350) in an unrelated criminal case.

The trial court sentenced defendant to a fourteen-year prison term consisting of the two-year midterm on count four, the ten-year weight enhancement for that charge, one and one-third years on count five, plus an additional eight months for the cocaine possession charge. Concurrent terms were imposed on counts one, two and three and their related enhancements.

The trial court did not abuse its discretion by imposing the midterm on count four. "Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in 'qualitative as well as quantitative terms' [citation] . . . . We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational." (*People* v. *Oberreuter* (1988) 204 Cal.App.3d 884, 887 [251 Cal.Rptr. 522], disapproved on other grounds in *People* v. *Walker* (1991) 54 Cal.3d 1013, 1022 [1 Cal.Rptr.2d 902, 819 P.2d 861].) The midterm is statutorily presumed to be the appropriate term unless there are circumstances in

aggravation or mitigation of the crime. (Pen. Code, § 1170, subd. (b); Cal. Rules of Court, rule 420(a).) While the probation and sentence report noted the mitigating factors included defendant's lack of a prior record, his voluntary acknowledgment of wrongdoing at an early stage of the proceeding and his motivation to obtain additional income to pay for his disabled son's medical expenses, it also noted the great quantity of drugs as an aggravating factor. The trial court need not explain its reasons for rejecting mitigating factors. (*People* v. *Thompson* (1982) 138 Cal.App.3d 123, 127 [187 Cal.Rptr. 612].) We conclude the record supports the trial court's decision to impose the midterm.

█ Defendant contends his sentence violates Penal Code section 654 which provides, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . ." █ It applies to the penal provisions of the Health and Safety Code. (*In re Adams* (1975) 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473].) Under section 654, courts are generally precluded from imposing multiple punishment where a defendant engages in a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute. (*In re Adams, supra,* 14 Cal.3d at p. 634; *People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) The focus of this rule is whether the defendant acted pursuant to a single intent and objective. (*People* v. *Perez* (1979) 23 Cal.3d 545, 551-552 [153 Cal.Rptr. 40, 591 P.2d 63].) The resolution of this question is one of fact and the trial court's finding will be upheld on appeal if it is supported by substantial evidence. (*People* v. *Williams* (1992) 9 Cal.App.4th 1465, 1473 [12 Cal.Rptr.2d 243]; *People* v. *Goodall* (1982) 131 Cal.App.3d 129, 148 [182 Cal.Rptr. 243].)

█ The trial court chose count four, possession of methamphetamine for sale, as the primary term. The Attorney General concedes the trial court erred by not staying defendant's sentences on counts one, two and three which concerned transportation of methamphetamine and possession of methamphetamine for sale. (*People* v. *Lopez* (1992) 11 Cal.App.4th 844, 849-850 [14 Cal.Rptr.2d 278].) The imposition of the enhancements for those counts must be stayed as well. (*People* v. *Smith* (1985) 163 Cal.App.3d 908, 912-914 [210 Cal.Rptr. 43].)

However, defendant contends the trial court also erred by imposing a consecutive sentence on count five for possessing ephedrine with the intent to manufacture methamphetamine. We disagree.

In *People* v. *Goodall, supra,* 131 Cal.App.3d 129, the defendants were convicted of possessing certain substances with the intent to manufacture

phencyclidine (PCP), possession of PCP for sale and manufacture of PCP and were separately sentenced on each charge. The Court of Appeal rejected their claims the sentences violated Penal Code section 654: "In this case the trial court could reasonably conclude that appellants intended (1) to manufacture PCP; (2) to sell the PCP they had manufactured, if they could find a buyer; and (3) to manufacture more PCP with the ingredients not used up in step (1). The manufacturing and selling elements in this process clearly involve separate objectives. It would not be proper to subsume the manufacturing into the selling as merely incidental to a single objective of selling the ultimate product for profit." (131 Cal.App.3d at pp. 147-148; see also *People v. Green* (1988) 200 Cal.App.3d 538, 543-544 [246 Cal.Rptr. 164] [proper to separately punish defendant convicted of utilizing a building to suppress law enforcement entry to manufacture, sell or possess for sale cocaine, maintaining a place for selling, giving away or using cocaine and possession of cocaine].)

The same is true here. The trial court imposed a consecutive sentence on count five because it constituted "a different crime . . . which is the defendant's involvement in the manufacturing of an illegal substance." In short, the court found defendant committed count five with a separate intent and objective from that involved with the other charges. The evidence supports this finding. Thus, the trial court's sentence on count five did not violate Penal Code section 654.

## DISPOSITION

The judgment is modified to stay execution of the sentences on counts one, two and three and their related enhancements pending service of the consecutive sentences on counts four and five, such stay to become permanent when service of the sentences under counts four and five are completed. In all other respects the judgment is affirmed.

Sonenshine, J., concurred.

SILLS, P. J.—I respectfully dissent. While my colleagues present an interesting rationale to uphold this search, they fail to confront a fundamental question: when, if ever, can use of a deception or subterfuge to obtain consent result in a *reasonable* search? Stated another way, can tricking someone into waiving his or her Fourth Amendment rights ever be reasonable?

The majority opinion finds no support in California decisional law. Our Supreme Court was crystal clear in *People* v. *Reeves* (1964) 61 Cal.2d 268,

273 [38 Cal.Rptr. 1, 391 P.2d 393]: "It is well settled by both federal and state decisions that 'an entry obtained by trickery, stealth or subterfuge renders the search and seizure invalid' . . . ." (See *People* v. *Esqueda* (1993) 17 Cal.App.4th 1450, 1486 [22 Cal.Rptr.2d 126] [no valid *Miranda* waiver because officers lied to suspect]; see also *People* v. *Machupa* (1994) 7 Cal.4th 614 [29 Cal.Rptr.2d 775, 872 P.2d 114] [invalid consent not cured by subsequent search warrant nor can an officer rely on such a warrant in good faith].) Although Professor LaFave presents an intriguing approach, it is in direct conflict with our state law. (See 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 2290, pp. 2690-2691.)

The majority attempts to bolster their position by emphasizing that as part of their request to search the truck for fruits of the fictitious burglary, the officers added that they would also look for "other contraband." But that is putting the cart before the horse. The prosecution must prove by a preponderance of the evidence that consent was not given in reliance on the initial falsehood. (Cf. *People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) Here, no such showing was even attempted; the prosecution thought it unnecessary. At the very least, a remand is required for a hearing at which the prosecution must show that Avalos did not rely on the deception when he gave his consent.