Filed 9/12/16  P. v. Pullum CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062762 |
| v. | (Super.Ct.No. FVA1400204) |
| HAROLD PULLUM, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Harold Pullum was charged by amended information with attempted murder (Pen. Code,[1] § 664/187, subd. (a), count 1), corporal injury to a spouse/cohabitant (§ 273.5, subd. (a), count 2), criminal threats (§ 422, count 3), and torture (§ 206, count 4). As to counts 1 and 2, it was alleged that defendant personally inflicted great bodily injury on the victim under circumstances involving domestic violence. (§ 12022.7, subd. (e).) A jury found him guilty in count 1 of the lesser included offense of attempted voluntary manslaughter (§§ 664/192), guilty as charged in counts 2 and 3, and not guilty of count 4. It also found true the great bodily injury enhancement allegations in counts 1 and 2. The trial court sentenced defendant to state prison for 10 years six months, as follows: the upper term of five years six months on count 1,[2] plus five years consecutive on the great bodily injury enhancement. The court further sentenced him to four years on count 2, plus five years on the great bodily injury enhancement, but stayed those terms under section 654. Finally, the court sentenced him to a concurrent two-year term on count 3.

On appeal, defendant contends that the court abused its discretion in imposing the upper terms on count 1 and the great bodily injury enhancement. We affirm.

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

[2] The court and the sentencing minute order refer to the attempted voluntary manslaughter count (§ 664/192) as count 5. However, the amended information and verdict forms refer to it as count 1. We will refer to the attempted voluntary manslaughter count, which the court deemed the principal count, as count 1.

2

## FACTUAL BACKGROUND

Defendant and his girlfriend, the victim, lived together for 18 years. On the afternoon of February 2, 2014, the couple was arguing at their home, and defendant broke/disabled four of the house phones. The victim called her daughter from her cell phone. Defendant grabbed the victim's cell phone from her hand and threw it against the wall. The victim's daughter picked her up from the house, and they left for a few hours. The victim bought a prepaid cell phone. When she returned home, she hid the cell phone under the blankets in her bed.

On February 4, 2014, defendant told the victim that he was going to leave her. They began arguing and the victim went into her bedroom and shut the door. She was planning on grabbing her purse and dog and leaving. However, defendant forced his way into the room, breaking the door frame. He grabbed her purse from her and threw it. He then grabbed her long hair, twisted it around his hand, and pulled her down between the nightstand and the bed. He struck her with a piece of wood that came loose from the door frame. Defendant pinned the victim's legs down with his body and punched her in the face with his fist numerous times. He then placed a pillow over her face, continued punching her on the ears and the side of her neck, and began telling her to die. Defendant told her he was going to kill her, then kill himself. The victim turned her head to the side to get it away from the pillow so she could breathe. Defendant then started biting her arms, face, and finger. He put his hands around her neck and tried to choke her, as well. The beating lasted approximately one hour, and the victim lost consciousness at least

3

once. Defendant eventually got off of her and said he was going to get a gun. The victim grabbed the prepaid cell phone that was hidden in the bed and called 911. She exited out of a sliding glass door and went to the backyard. Then, she hid behind a shed until the police arrived.

The responding police officer testified at trial. He said that when he arrived at the house, he found the victim sitting up against the shed. She was whimpering, begging for help, and warning the officer that defendant was getting a gun. She began slurring her words and then fell unconscious. The officer said the victim's face was extremely swollen, both of her eyes were black, there were several lacerations on her face, and her lips and mouth looked swollen. She had bite marks, scratches, and blood all over her arms.

The victim was taken to the hospital and examined. A doctor testified at trial that the victim lost consciousness several times, sustained soft tissue swelling and injuries to both arms and both hands, soft tissue swelling of her face, and a displaced nasal bone fracture.

## ANALYSIS

### The Trial Court Properly Imposed the Upper Terms

Defendant makes numerous arguments claiming that the court abused its discretion in imposing the upper term on the attempted voluntary manslaughter conviction (count 1) and the great bodily injury enhancement. We conclude that the

4

court properly sentenced defendant to the upper terms on the base offense and the enhancement.

A. *The Sentencing Hearing*

At the sentencing hearing, the court listened carefully to counsels' arguments. It then commented that this case was very serious and that the injuries the victim sustained (both physical and emotional) were irrevocable. The court noted that the jury appeared to have accepted defense counsel's argument that defendant "snapped," and it showed some leniency in finding him guilty of attempted voluntary manslaughter, rather than attempted murder. The court agreed that he snapped and noted that defendant did not have a prior record. However, the court did not trust that he "wouldn't do it again." The court noted that it had been on the bench almost 20 years and had dealt with a lot of domestic violence cases; it stated: "This is one of the worst that I've seen." The court denied probation and proceeded to state that the factors in aggravation were more significant than the circumstances in mitigation. The court reiterated that the crime involved great violence and great bodily harm. It noted that the evidence showed defendant used a weapon, but also commented that one of the more egregious circumstances was that defendant threatened to get a gun to kill the victim. The court also stated that the victim was particularly vulnerable since she was 69 years old at the time of the commission of the offense. It further found that defendant took advantage of a position of trust to commit the offense. The court then sentenced defendant, based on all the circumstances in aggravation, to the upper term of five years six months on count 1 and the upper term

5

of five years on the section 12022.7 enhancement, for a total term of 10 years six months. The court stayed the sentence on count 2 and its enhancement, pursuant to section 654, and imposed the sentence on count 3 to run concurrent to the sentence on count 1.

B. *Standard of Review*

"'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms" [citation] . . . . We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational.' [Citations.]" (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)

C. *There Was No Abuse of Discretion*

The court stated numerous reasons for imposing the upper term on count 1 and the great bodily injury enhancement. It stated that: (1) the crime involved great violence and great bodily harm; (2) defendant used a weapon (the part of the wooden door frame that he broke off) at the time of the offense; (3) the victim was particularly vulnerable since she was 69 years old; and (4) defendant took advantage of a position of trust to commit the offense. The court properly relied on these valid factors in imposing the upper terms. (See Cal. Rules of Court, rule 4.421 (Rule 4.421).)[3]

---

[3] We further note that, in denying probation, the court stated that this was one of the worst cases of domestic violence it had ever seen, and that it did not trust that defendant would not commit the same offense in the future. The court said that it had to worry about the future and the protection of the community. Thus, the court could have

*[footnote continued on next page]*

6

1. *The Court Did Not Necessarily Use the Victim's Serious Injuries to Aggravate Both the Base Term and the Enhancement*

Defendant first claims that the court used the victim's "serious injuries" as an aggravating factor to impose the upper term on both the offense and the great bodily injury enhancement; thus, the court impermissibly engaged in the dual use of facts. (*People v. Scott* (1994) 9 Cal.4th 331, 350.)  The record shows that the court relied upon the fact that the crime involved great violence and great bodily harm as an aggravating circumstance.  (Rule 4.421, subd. (a)(1).)  Assuming arguendo that such circumstance is the same factor as defendant is complaining about ("serious injuries"), the court did not err.  "[A] court needs only one factor to impose the aggravated term.  [Citation.]" (*People v. Kelley* (1997) 52 Cal.App.4th 568, 581.)  The court here listed not only one, but several factors that adequately supported the imposition of the upper term on the base charge and the enhancement.  (See *ante*).  Thus, there was no apparent dual use of facts.

Defendant also claims that the court impermissibly used the great bodily injury enhancement (§ 12022.7) to impose the upper term on the offense.  (§ 1170, subd. (b) ["the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"].)  However, there is no

*[footnote continued from previous page]*

*[footnote continued from previous page]*

easily relied upon the aggravating factor that defendant had "engaged in violent conduct that indicates a serious danger to society."  (Rule 4.421, subd. (b)(1).)

7

indication in the record that the court used the fact of the great bodily injury enhancement to impose the upper term on the offense.

    2.  *The Court Properly Considered the Victim's Vulnerability and Defendant's Use of a Position of Trust*

Defendant further contends that the court violated the rule against using the fact of an enhancement to impose an upper term by relying on the victim's vulnerability and defendant's use of a position of trust. He claims these "are elements of or implicit in section 12022.7, subdivision (e), an enhancement which describes inflicting injury under circumstances involving domestic violence." We disagree. Section 12022.7, subdivision (e), states that "[a]ny person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years. As used in this subdivision, 'domestic violence' has the meaning provided in subdivision (b) of Section 13700." Section 13700, subdivision (b), defines "domestic violence" as "abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." There is no express or implied language that the enhancement requires proof of the elements of vulnerability or position of trust to commit the offense. Accordingly, we cannot say that the court abused its discretion in relying on the victim's

vulnerability and defendant's use of a position of trust as aggravating factors in imposing the upper term on the offense.

Defendant further contends that the court improperly relied upon the victim's vulnerability as an aggravating factor, since the jury found him guilty of the lesser offense of attempted voluntary manslaughter, rather than attempted murder. He reasons that the jury necessarily found that the victim provoked him, and she was, therefore, not vulnerable. However, the court found that the victim was particularly vulnerable because she was 69 years old. The court properly found so since an elderly victim is certainly vulnerable. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 842.) Thus, defendant's claim has no merit.

3. *The Court Properly Relied Upon Defendant's Use of a Weapon as an Aggravating Factor*

Defendant claims that the trial court abused its discretion in considering his threat of using a gun in imposing the upper terms, since the evidence about whether he had access to a gun was inconclusive. However, the record does not show that the court relied upon the "threat" of his use of a gun as an aggravating factor in imposing the upper term. Rather, the court relied upon the factors listed in the probation officer's report, one of which was that "defendant used a weapon at the time of the offense." The court stated: "[t]here was some testimony as well as photographic evidence that the defendant used a weapon at the time of the offense, but one of the more egregious circumstances, whether or not he used a part of the door frame . . . was his threat of getting that gun to kill her."

9

Thus, the court apparently relied on the fact that defendant used the wooden piece from the broken door frame as a weapon as the aggravating factor. While it did refer to the circumstance that defendant threatened to get a gun, it is not clear that the court actually used that as an aggravating factor.

4. *The Court Considered Defendant's Lack of a Prior Record*

Defendant finally claims that the court failed to give "due weight" to the mitigating factor that he had no prior criminal history. However, the court specifically acknowledged that he had no criminal history. It weighed that factor against the aggravating factors and properly concluded that the aggravating factors outweighed that one mitigating factor.

Ultimately, in view of the numerous aggravating factors, we cannot say the court's decision to impose the upper term on the offense and the enhancement was arbitrary.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

10