Filed 3/1/22  P. v. Moberly CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE , <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROBERT LEE MOBERLY, <br><br> Defendant and Appellant. | F079851 <br><br> (Super. Ct. No. BF116563A) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Robert Lee Moberly appeals the trial court's order denying his petition to recall his sentence and to be resentenced pursuant to Penal Code section 1170.91.[1] Moberly contends the trial court (1) employed the wrong standard when finding he had not made the requisite showing for relief under the statute and (2) erred by noting it would not resentence Moberly even if it had found he had met his burden under the statute. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

In March 2007, Moberly was charged, by information, with first degree murder (§ 187, subd. (a); count 1), being a felon in possession of a firearm (§ 12021, subd. (a)(1); count 2), and being a felon in possession of ammunition (§ 12316, subd. (b); count 3.) As to count 1, the information alleged Moberly personally used a firearm in committing the offense (§ 12022.5, subd. (a)(1)). Moberly pled not guilty and denied the enhancement allegations as to count 1 and entered no contest pleas as to counts 2 and 3.

A jury trial was conducted on count 1. In October 2006, on the day of the incident, Moberly had attended a counseling session for one of his grandchildren with his wife; his son Thomas; and Thomas's wife Jackie. During the session, Moberly became angry with Jackie, and he and his wife left. Later, Thomas went to Moberly's home, an argument ensued, and Thomas refused to leave. Moberly went to his bedroom, returned with a gun, and told Thomas to leave. Thomas did not leave, and instead moved closer to Moberly and said, " 'Go ahead, Dad. Go ahead and shoot me.' " Moberly's wife then heard a gunshot and turned to see Thomas had been shot in the head. Moberly went outside, handed one of his grandsons the gun, and left the scene. Moberly went to his brother's house, was hysterical and stated that an accident had occurred.[2]

[1] All further undesignated statutory references are to the Penal Code.
[2] The transcript of the trial is not part of the record on appeal. We have gleaned the general facts of Moberly's offense from *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1195.

The jury found Moberly guilty of voluntary manslaughter (§ 192, subd. (a)), a lesser included offense of count 1, and found true that Moberly had personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)(1)).

Moberly was sentenced in March 2008. As to count 1, the sentencing court imposed the upper term of imprisonment of 11 years for the voluntary manslaughter and the upper term of 10 years for the firearm enhancement, for a total of 21 years. The sentencing court also imposed the upper term of three years each as to counts 2 and 3 to run concurrently to the sentence in count 1.[3]

On March 28, 2019, Moberly, in pro per, filed a petition to recall his sentence pursuant to section 1170.91, alleging he was a veteran of the United States Army RA and as a result of his military service he "may be suffering from post-traumatic stress disorder, and/or substance abuse, or a traumatic brain injury (TBI) or mental health problems," and those circumstances were not considered as a factor in mitigation at the time of his sentencing. Moberly was thereafter appointed counsel. The prosecution opposed the petition, arguing Moberly had not shown a significant nexus between his alleged conditions and his military service.

On August 14, 2019, the court conducted a hearing on Moberly's petition. Moberly testified on his behalf. He testified that at the time of the hearing, he was 70 years old. He joined the military in November 1967 and served until October 1974. He was ordered to Thailand as a mechanic and never experienced combat. He testified that when his plane was landing in Saigon, he witnessed the plane right in front of him get

---

[3]     Moberly appealed the judgment of his conviction, contending the sentencing court erred by relying on the same factor to impose the aggravated term on both the voluntary manslaughter offense and the firearm enhancement. In *People v. Moberly*, *supra*, 176 Cal.App.4th 1191, this court affirmed the judgment, holding the "dual use of a fact or facts to aggravate both a base term and the sentence on an enhancement is not prohibited." (*Id*. at p. 1198.)

shot down. Everyone on the airplane died, many of whom were Moberly's classmates from training. He remembered watching the deceased be put in body bags for five hours. He stated the experience made him feel "very sick" and still affected him. Afterward he was "distraught," "tore up," and "totally mentally, physically sick to [his] stomach, sick to [his] soul." Moberly said he would throw up upon seeing blood and still had nightmares from the experience. Moberly testified that as a result of the experience, he self-medicated by drinking, smoking marijuana, and eventually using heroin.

When asked whether his experience had an effect on his crime, he responded, "Maybe. I'm not sure." He explained that when he gets stressed, he "run[s]" to alcohol to cope and that drugs and alcohol played a part in his offense, as he was intoxicated when "[his offense] happened."

On cross-examination Moberly admitted he started drinking alcohol when he was five years old. When confronted, however, with statements he made to the probation officer that he started smoking marijuana on a daily basis at the age of 17 and began using heroin at age 18, he responded that the probation officer was "confused" and "mixed up." Moberly reiterated he did not start to use heroin until after arriving in Thailand. He admitted he "might have" told a psychologist he was emotionally abused as a child but denied abuse at the time of the hearing. He explained he was not abused but rather "was made to believe that I was the responsible person in the family when my dad kept going into the mental hospital."

Patricia B., Moberly's sister, testified on Moberly's behalf. She testified that Moberly joined the military when he was 18 years old and she was 12. According to her, before Moberly enlisted, he was very quiet, good natured, and "like a second father" to her. He never appeared irritable, violent, or anxiety-ridden. Moberly served four or five years, and when he returned he "seemed like a different person." He was "paranoid" and

4.

"withdrawn" and appeared more anxious. Patricia admitted on cross-examination she did not spend very much time with Moberly when he returned.

Dr. Gil Schmidt testified on behalf of the prosecution. He conducted a section 1368 evaluation of Moberly in September 2007 to determine whether Moberly was competent to stand trial. He spoke with Moberly for 75 minutes and was not asked to evaluate Moberly for post-traumatic stress disorder (PTSD), nor did he use any tools, screening devices particular to an evaluation for PTSD. Schmidt, however, discussed Moberly's time in Vietnam with him; Moberly reported he had auditory hallucinations of his "dead buddies," but did not mention the plane crash. Moberly had told Schmidt he had friends who reported graphic descriptions which he had retained the memory of. Schmidt did not follow up on the statements regarding Moberly's service because it did not rise to a level of relevance to whether it would affect his competency to stand trial. Schmidt explained if he had heard significant trauma, he may have pursued it more to determine whether it presently affected Moberly at the time of the evaluation. Following his evaluation, Schmidt diagnosed Moberly with a mild form of depression. He did not diagnose Moberly with any polysubstance dependence.

Following the testimony, Moberly's counsel requested that the court resentence Moberly considering Moberly's military background and related trauma as a factor in mitigation. Moberly's counsel requested Moberly be sentenced to the middle term of imprisonment rather than the upper term.

The prosecutor argued Moberly had not met the burden to show his trauma, mental health issues, and substance abuse resulted from his military services so as to make him eligible for relief. The prosecutor argued Moberly's issues existed prior to his military service and that he never mentioned the plane crash before the hearing though he had an opportunity to do so.

The court denied the petition, finding Moberly had not met his burden to show a qualifying condition as a result of military service and, alternatively, even if he had, the factors in aggravation "clearly" would outweigh the factors in mitigation and "nothing would change."

## DISCUSSION

Section 1170.91, subdivision (a) provides in pertinent part, "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from … post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a [determinate prison] term." Individuals currently serving felony sentences may, under section 1170.91, subdivision (b), petition the court for resentencing alleging they meet the criteria of section 1170.91, if (1) their qualifying condition was not considered as a factor in mitigation at the time of sentencing and (2) they were sentenced prior to January 1, 2015. Upon receiving a section 1170.91 petition for resentencing, the court must hold a hearing to determine whether the person satisfies the criteria. (§ 1170.91, subd. (b)(B)(3).) "If the person satisfies the criteria, the court may, in its discretion, resentence the person following a resentencing hearing." (§ 1170.91, subd. (b)(B)(3).)

Here, in ruling on Moberly's petition, the trial court stated: "I don't believe the defense has met the burden that he suffered from [post-traumatic stress disorder, substance abuse, or mental health problems] as a result of his military service." The court went on to say that "[e]ven if [Moberly] did meet that burden, it would simply add a factor in mitigation in this case. [The court] looked at the original probation report. The factors in aggravation clearly would have outweighed the factors in mitigation and nothing would change."

Moberly first contends the court applied an incorrect standard by requiring Moberly to prove he definitively *suffered* from rather than *may be* suffering from one of the qualifying conditions of the statute. Respondent contends any error the trial court made with regard to the standard it applied was rendered harmless by the trial court's further statement that "nothing would change" if it were to consider any military service-related trauma or substance abuse. We agree with respondent.

As respondent points out, remand is not appropriate when it would be an idle act. (See *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 ["reviewing courts have consistently declined to remand cases where doing so would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence"]; see also *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [where court is unaware of discretionary sentencing choices, remand for resentencing is required unless record " 'clearly indicate[s]' " trial court would have reached same conclusion " 'even if it had been aware that it had such discretion' "].) It is clear from the trial court's comments that considering Moberly's military-related issues as a mitigating factor would not have caused the trial court to exercise its discretion to resentence Moberly. We therefore need not determine whether the trial court applied the correct standard because assuming any error, in light of the court's comments, remand is not necessary.

This does not end our analysis, as Moberly also contends the trial court's comments indicating it would not resentence Moberly even if it had found he met the criteria set forth in section 1170.91, constituted a separate error. We disagree.

As a threshold matter, section 1170.91, subdivision (b)(3), expressly confers discretion to a court hearing a petition under the section to resentence the petitioner. As the appellate court in *People v. Coleman* (2021) 65 Cal.App.5th 817, explained, "If, after a [section 1170.91] hearing, the trial court finds that the petitioner may be suffering from a qualifying condition as a result of his or her military service, it 'may in its discretion,

7.

resentence the person following a resentencing hearing.' *It does not necessarily have to resentence the petitioner.* And if it does, it need only consider the fact that the petitioner may be suffering from a qualifying condition as a result of his or her military service as one mitigating factor, along with all of the other mitigating and aggravating factors in the case. The People are free to challenge the credibility of the petitioner's claim." (*Id.* at p. 823, italics added.)

Moberly must therefore show the court's finding it would not resentence Moberly assuming he had satisfied his burden was an abuse of discretion. A court abuses its discretion when it exercises it in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice. (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.) Here, we find no abuse of discretion. " 'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms." ' " (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) A court may reject a defendant's mitigating factors (*People v. Thompson* (1982) 138 Cal.App.3d 123, 127), and a single factor in aggravation will justify the trial court's imposition of the upper term (*People v. Sandoval* (2007) 41 Cal.4th 825, 848).

Here, the court indicated it had read the original probation report. The probation report detailed the circumstances of the crime, which included Moberly retrieving a handgun from another room during an argument with his son, pointing the gun at his son's head, and shooting him. The probation report also included Moberly's criminal history, which ranged from 1993 through 1998, including misdemeanor convictions for contributing to delinquency of a minor, forgery, receiving stolen property, and drug and vehicle code offenses. In addition, in 1998, Moberly had committed a felony violation of Health and Safety Code section 11377, subdivision (a), for which he was granted felony

probation. Moberly violated probation, and the court revoked it; Moberly thereafter served 16 months in prison, was paroled, and subsequently violated parole twice.

The probation report listed as circumstances in mitigation that Moberly had successfully completed drug diversion in a 1996 drug case and had an "insignificant record of criminal conduct, considering the recency and frequency of criminal conduct in that the defendant's last convictions were in 1998." For circumstances in aggravation, the probation report listed that (1) the crime involved great violence in that the victim was shot in the forehead, (2) Moberly's prior convictions as an adult were numerous, (3) Moberly served a prior prison term, and (4) Moberly's prior performance on misdemeanor probation, felony probation, and parole was unsatisfactory in that he violated terms and reoffended.

The court also indicated it read and considered the prosecutor's opposition, which included the sentencing court's determinations regarding mitigation and aggravation. The sentencing court stated:

> "Within the sentencing framework, the Court makes the following findings: In mitigation, notwithstanding [the prosecutor's] arguments, I do find that [Moberly] did complete drug diversion in [another case]. His record, given his age, I don't know that the number of convictions are of significance.

> "But in aggravation, the crime involved great violence. [Moberly] has served a prior prison term. [Moberly's] prior performance on misdemeanor probation, felony probation, and parole has been unsatisfactory in that he violated terms and conditions of those statuses and reoffended. And most significantly – I am not going to impose consecutive terms as to the second and third count, the ex-felon in possession of the firearm or ex-felon in possession of the ammunition, but I think the fact that he was an ex-felon and did have those items is a significant factor in aggravation in this case and to a great deal – to a great extent, I should say, is the manner in which I end up coming to the determination that as to both the voluntary manslaughter and the use of firearm, the aggravated terms are appropriate."

Based on the information contained in the probation report and the sentencing court's comments at sentencing regarding how it arrived at the aggregate sentence, the court was not unreasonable in determining the evidence presented at the section 1170.91 hearing would not have balanced the aggravating factors so as to justify imposition of the middle term.

The court's finding contained an implicit determination the evidence presented by Moberly carried little relative weight in mitigation, and we cannot say this determination was arbitrary or irrational. When Moberly was asked if he thought his alleged military-related trauma had any effect on his offense, he was equivocal. This was supported by other facts adduced at trial, including that he did not mention the traumatic incident to Schmidt even though they discussed his time in Vietnam and the symptoms he did express did not affect Schmidt's opinion on Moberly's present competency at the time of his trial. The trial court could have reasonably concluded the aggravating factors outweighed the factors in mitigation, including Moberly's military-related service conditions so as a resentencing hearing was not necessary.

Moberly raises several arguments as to why the trial court's conclusion was "unwarranted," none of which persuade us that the trial court abused its discretion: (1) Moberly was charged with murder but convicted of voluntary manslaughter, which is consistent with Moberly having suffered from PTSD, (2) Moberly's criminal record consisted of misdemeanors, the last of which occurred eight years before Moberly's offense; and (3) the probation report did not support the trial court's conclusion because it recommended the middle term on the voluntary manslaughter charge.

First, as we have explained, the trial court has broad discretion on what weight to give aggravating and mitigating factors; that Moberly's crime was consistent with the trauma he alleged having and that the probation report recommended the middle term did not compel resentencing under the facts of the case.

10.

As for Moberly's criminal history, Moberly's characterization of his criminal history consisting only of misdemeanors, is somewhat misleading. To make this claim, Moberly relies on the fact that his felony offense was for a violation of Health and Safety Code section 11377, subdivision (a), an offense which has since been classified as a misdemeanor. We acknowledge that Proposition 47, enacted by voters in the November 2014 election, downgraded several felonies and wobblers, including Health and Safety Code section 11377, to misdemeanors and permitted persons convicted of those felonies and wobblers to have them redesignated as misdemeanors. (§ 1170.18.)[4] In any event, however, Moberly's conviction prohibited him at the time of his offense, and would still prohibit him if redesignated as a misdemeanor today, from possessing a firearm. (§ 1170.18, subd. (k).) As we have discussed, Moberly's firearm possession was a factor in aggravation discussed by the original sentencing court, which was affirmed as appropriately aggravating both the base offense and the firearm enhancement by this court in *People v. Moberly*, *supra*, 176 Cal.App.4th 1191. Further, the remoteness in time of Moberly's criminal history was listed as a factor in mitigation in the probation report and presumably considered by the trial court in its review.

Finally, we reject Moberly's suggestion the trial court was required to present the mitigating factor to the original sentencing court. This suggestion is misplaced. Section 1170.91, subdivision (b), provides that a petition is to be heard by the trial court that entered the judgment of conviction unless that judge is unavailable, in which case the presiding judge shall designate another judge to conduct the hearing. As such, we presume the original sentencing judge would have conducted the section 1170.91 hearing had he been available. As he did not, a circumstance not, to our knowledge, objected to by any party, the judge who conducted the section 1170.91 hearing had the discretion to

---

**4** There is no evidence Moberly has sought to or succeeded in having his felony conviction redesignated as a misdemeanor.

resentence the petitioner conferred by the statute. The court's declining to do so here, as we have explained, was not an abuse of discretion.

We find no reversible error.

## **<u>DISPOSITION</u>**

The trial court's denial of Moberly's section 1170.91 petition is affirmed.


SMITH, J.

WE CONCUR:


HILL, P. J.


FRANSON, J.