Filed 4/21/23  P. v. Gallardo CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ARTURO FLORES GALLARDO,<br><br>　　　Defendant and Appellant. | A164744<br><br>(Sonoma County<br>Super. Ct. No. SCR747375-1) |

　　　Arturo Gallardo was sentenced to a six-year prison term after entering a plea of no contest to committing a lewd act upon a child.  (Pen. Code, § 288, subd. (a); subsequent statutory references are to this code.)  On appeal, Gallardo contends the sentencing court (1) abused its discretion by denying Gallardo probation, and (2) misapplied a statutory presumption to impose a lower-term sentence when "psychological, physical, or childhood trauma" was a "contributing factor in the commission of the offense" (§ 1170, subd. (b)(6)(A)).  We reject these contentions and affirm the judgment.

**FACTUAL AND PROCEDURAL SUMMARY**

**I. Gallardo's Conviction**

　　　In February 2021, sixteen-year-old Jane Doe made a police report that Gallardo sexually molested her on multiple occasions when she was four.  Doe reported that the incidents occurred when Gallardo was married to Doe's

1

aunt, who babysat Doe at Gallardo's home while Doe's parents were at work. Gallardo would wait until Doe's aunt was busy in another room or away from the home and then call Doe into a separate room and tell her he had "an itch on his genitals." Doe recalled that she scratched Gallardo's genitals, but she did not recall him touching her inappropriately. Initially, Doe stated that she did not want to pursue criminal charges, but a few days later Doe's parents requested that the police initiate a criminal investigation. Subsequently, Doe gave police a more detailed report of what Gallardo did to her. He would ask Doe to join him in a separate room, pull down his sweatpants, expose his genitals, and then "have [her] 'scratch' his erect penis." Doe estimated that she and her young siblings were left in the care of their aunt on three or four occasions, and each time Gallardo used the fact that Doe was a helpful child to seek her help in scratching his itch. The interactions lasted 10 to 15 minutes, and afterward he always told her to wash her hands.

From the police station, Doe made pretextual calls to Gallardo on two consecutive days in June 2021. During the second call, Doe asked if Gallardo remembered lowering his pants and underwear, exposing himself and having Doe touch his penis with her hand. Gallardo responded, " 'Well, I think it is coming to my memory something like that, but not very good.' " Doe said she remembered it happening more than once and Gallardo acknowledged that he did " 'offend' " her and make her touch him " 'like two times.' " When Doe asked what he did to offend her, Gallardo responded he made her " 'touch his penis, nothing more.' " Gallardo denied that he ever touched Doe inappropriately, saying he was " 'not capable of that.' " He asked Doe to forgive him before God and asked for " 'a million pardons' " for what he had done.

In July 2021, Gallardo was arrested and interviewed by police detectives. When asked what had occurred with Jane Doe, Gallardo's initial response was that " 'a long time ago, I don't even know why, I made [Doe] an indecent proposal, that is all.' " As the interview progressed, Gallardo made more incriminating statements, admitting two occasions when he asked Doe to touch his penis after he lowered his pants and exposed himself to her. He denied ever touching Doe inappropriately. He stated that he did not know why he chose Doe or what he was thinking, he understood what he had done was wrong, and he felt remorse. Gallardo recalled the incidents happening when he was around 42 and Doe about five. He described how the child's hand gripped him for approximately five seconds, and admitted he was nervous about having Doe touch his penis because someone might see them.

Near the end of his police interview, Gallardo disclosed that he had been molested by an uncle when he was 10 and living in Mexico. This experience sometimes made Gallardo feel the behavior was normal and caused him confusion. He maintained that the incidents with Jane Doe were the only time he behaved that way with a child. When Gallardo was told that Doe was concerned Gallardo had touched her inappropriately, Gallardo denied this, stating " 'No, not her,' " and reporting that nothing else happened aside from Doe touching his bare penis twice.

Gallardo was charged with two felony counts of committing a lewd act on a child. (§ 288, subd. (a).) Both charges were accompanied by special allegations that the victim was under the age of 18 when the crimes occurred, and that prosecution of these offenses commenced before Jane Doe turned 40 years old. (§ 801.1, subd. (a).) Gallardo pled no contest to count one pursuant to an open plea agreement, with the understanding that he faced a maximum eight-year prison term.

## II. Gallardo's Sentence

Gallardo's sentencing hearing was held over two court days in February 2022.

### A. Evidence Considered by the Court

Documents submitted for the court's consideration included a "Psychosexual Risk Assessment," the probation department's presentence report, sentencing briefs, victim impact statements, and letters expressing support for Gallardo. No witnesses testified, although a victim/witness advocate read statements submitted by Jane Doe and her parents.

**Psychosexual Risk Assessment**: On December 3, 2021, Dr. Rachyll Dempsey conducted an "independent psychosexual risk assessment" of Gallardo to assist the court "in the determination of the appropriateness of a plea deal pursuant to Penal Code [section] 288.1." Dempsey conducted a clinical interview, administered various tests, and reviewed some records, including the police reports. She reported that Gallardo appeared to be a good historian and appeared to make a "good effort" to perform when tests were administered to him, although the Spanish interpreter asked him to enunciate because he was " 'muttering.' " Dempsey's findings included that Gallardo's intellectual functioning was poor, and his personality profile was of a person who needs social approval, and tries to present himself in an overly favorable light.

Gallardo's risk for sex offending was assessed by using the "Hare Psychopathy Checklist," a "20-item rating scale for the assessment of psychopathic traits in adults." Gallardo's overall score indicated that his risk of sexual offending was "in the Low range . . . suggesting no traits in common with known psychopaths." According to Dempsey's report, research correlates the 20 items included on the Hare checklist "with sexual offending

4

behavior," by covering "three specific domains:  Psychosocial Adjustment, Sexual Offenses, and Future Plans."  All three areas indicated a low risk for future sexual violence, Dempsey found.  Regarding psychosocial adjustment, Gallardo had maintained a long-term marriage (although he was recently separated), had a large support system, and "denied ongoing alcohol use or drug abuse, a history of mental health issues, or past criminal offenses."  There was no evidence of a criminal history, or of sexual offenses (aside from the current offense), and Gallardo reported "pro-social achievable future plans."

**Probation Report**:  On December 15, 2021, the probation department submitted a 15-page report recommending that the court deny Gallardo probation, sentence him to a six-year prison term, and require him to register as a "Tier Two sexual offender."

A probation officer interviewed Gallardo on December 7, with the assistance of an interpreter.  Gallardo stated that he was familiar with the police reports and confirmed that he had admitted " 'that the young woman— the little girl—touched [him] on two different occasions.' "  Gallardo stated that he had no idea why he targeted Jane Doe, calling himself " 'dumb,' " and stating, " 'I do not know what I was thinking.' "  He denied any other incidents involving inappropriate contact with children and denied being attracted to children.  He acknowledged that what he had done was wrong and " 'repent[ed]' " for what he did.

Gallardo reported that he was married to Jane Doe's aunt for 30 years, they had been separated for approximately two years, and neither had filed for divorce "yet."  He reported a stable work history and good relationship with his adult children despite his current situation, and no current or past problems with substance abuse.  Gallardo also reported that he had "no

mental health issues or concerns, and no history of suicidal thoughts/attempts, hospitalizations, medications, or counseling." The probation officer reminded Gallardo that during his police interview he had stated that an uncle sexually molested him when he was 10, and Gallardo confirmed this information. "When asked, he indicated he has never sought counseling for childhood sexual abuse. When asked if he felt he could benefit from such counseling, he responded, 'I think so, yes.' "

The department reported that Gallardo was eligible for probation but did not recommend it. (See Cal Rules of Court, rules 4.413 & 4.414; subsequent rule references are to these rules.) It listed factors favorable to Gallardo: a limited prior criminal record (two misdemeanors for driving without a license); his expressed willingness and apparent ability to comply with terms of probation; the prospect of adverse collateral consequences; and his expressions of remorse. Unfavorable factors include that Jane Doe was a particularly vulnerable victim; Gallardo inflicted emotional injury; the manner of the crime demonstrates sophistication and planning; Gallardo took advantage of a position of trust; and his prior performance on probation was unsatisfactory as he was on probation for the driving violation when he sustained a conviction for a new offense.

The report also briefly addresses circumstances in aggravation and mitigation for purposes of sentencing. (Rules 4.421 & 4.423.) The only potential aggravating circumstance mentioned pertains to Gallardo's prior performance on probation for the driving offenses. Since Gallardo was unsuccessful in his compliance as to one conditional sentence grant and successful as to the other, "in essence, these factors in aggravation and mitigation cancel each other out," the department opined. The department

6

identified only one circumstance in mitigation, Gallardo's limited prior record.

Ultimately, the department recommended that the court deny probation and impose a midterm sentence of six years. Despite positive factors suggesting Gallardo could be successful on probation, and Gallardo's minimal record, the department had overriding concerns about "Gallardo's actions and level of insight in this case." At a minimum, there were two separate incidents involving a four-year-old child, and Doe had reported that she remembered three or four times. Gallardo was a trusted family member when he targeted a vulnerable child and lured her into the incidents by "taking advantage of her innocent desire to be helpful." When asked about the impact of his conduct, Gallardo opined that Doe likely did not feel " 'all that well' " and her parents felt " 'bad.' " The department recognized that Gallardo was "accepting responsibility for his conduct" now that Doe had brought it to light, but these understatements were significant, the department believed, when considered in relation to the serious emotional harm suffered by Doe and her parents. Despite acknowledging what he did was wrong, Gallardo's "empathy and insight appear to be limited."

The department voiced two additional case-specific concerns. First, it is difficult to assess whether Gallardo would be a danger to others if not imprisoned. He was in the community for 12 years after he molested Doe and there were no additional known victims. But during his police interview Gallardo told the police that his experience of being molested as a child sometimes made him believe that such " 'behavior was normal, and caused

him confusion.' " Then again, Gallardo did not even mention his prior molestation during his risk assessment interview.[1]

Second, the department urged the court to consider the method Gallardo used to persuade "his vulnerable niece to accomplish the inappropriate touching, which we feel overshows his lack of a prior record and his mature age." In this regard, the department observed that "[a] sexual offense against a child is conduct which warrants punishment at the state level," and, given the seriousness of Gallardo's offense, the department urged the court to give weight to the request of the victim's family that Gallardo receive firm punishment for "sexually victimizing a young family member."

**Risk Assessment Addendum**: On January 21, 2022, Dr. Dempsey issued an addendum to her risk assessment of Gallardo, which she prepared at the request of defense counsel. Dempsey addressed two additional facts she had not previously considered: Gallardo "denied childhood abuse, trauma, or neglect" when Dempsey interviewed him, which was inconsistent with a disclosure he made to police and later confirmed to the probation officer that he had been molested when he was 10. Further Gallardo had denied "any history of arrests aside from the current alleged offense" during his risk assessment interview, whereas the probation report indicates that he suffered two prior driving-related convictions, as well as a violation of his conditional sentence grant in one of those prior cases. This additional information did not significantly impact the risk assessment and Gallardo's score remained in the low range, Dempsey reported. Dempsey opined that

---

[1] Gallardo had reported that if he was released, he planned to live with his adult daughter, which caused the department some concern as there was a minor child in the home.

8

omitting information about childhood sexual abuse and his prior criminal record was consistent with Gallardo's personality assessment as it could have been part of an attempt to "present himself in an overly favorable, socially acceptable light." Dempsey suggested further that "Gallardo's rapport with the male interpreter could have exacerbated this personality tendency," and that his response to the probation officer that he could benefit from counseling was another example of this personality tendency.

**Sentencing Briefs and Arguments**: In late January 2022, the defense filed a Statement in Mitigation of Sentence. Defense counsel requested that the court grant Gallardo probation, concurring with the probation report to the extent it finds Gallardo eligible for probation and lists favorable factors. The defense argued that additional favorable factors not mentioned in the report include that the circumstances of the current offense are less serious than other comparable crimes, and that it is not likely Gallardo will pose a danger to others if he is not imprisoned. The defense argued further that the probation department did not give sufficient weight to favorable factors, such as Gallardo's remorse. Finally, defense counsel disputed the department's statement that Gallardo's prior performance on probation was unsatisfactory, arguing that a conditional grant is not the same as probation.

The defense also requested that if probation was denied, Gallardo receive a "mitigated" three-year prison term pursuant to an amendment to section 1170 that went into effect earlier that month, which added section 1170, subdivision (b)(6)(A) (section 1170(b)(6)(A)). Under this provision, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the

lower term if any of the following was a contributing factor in the commission of the offense:  [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."  (§ 1170(b)(6)(A).)  The defense argued that the molestation Gallardo suffered when he was 10 "clearly qualifies as childhood trauma," and that Gallardo's "childhood trauma clearly was a contributing factor in his conduct here."

The People filed their sentencing brief in February 2022.  The People concurred with the probation department's recommendation to deny probation.  The prosecutor disagreed with the defense argument that the circumstances of this crime are less serious than other sex offenses against children.  Like the department, the prosecutor acknowledged factors in favor of probation but argued they are outweighed by unfavorable factors delineated in the probation report.  The People also concurred with the department's recommendation to impose a six-year midterm prison sentence. But they argued that the report omits applicable circumstances in aggravation, including that Jane Doe was particularly vulnerable (rule 4.421(a)(3));  the manner of the crime indicates planning (rule 4.421(a)(8)); and Gallardo took advantage of a position of trust (rule 4.421(a)(11)).

The People also disputed the defense argument that a presumptive lower term applies pursuant to amended section 1170(b)(6)(A), giving two main reasons.  First, there is no evidence Gallardo suffered a prior childhood sexual assault aside from his own claim, which he did not even mention when he was interviewed by Dr. Dempsey.  Second, Gallardo said that this childhood experience caused him confusion, but he did not ever say that it contributed to the crimes he committed against Jane Doe.

## B. The Court Findings and Sentencing Order

Before announcing Gallardo's sentence, the court made a record of the fact that the sentencing law had changed since Gallardo entered his plea. Pursuant to amendments to section 1170 that went into effect January 1, 2022, the maximum sentence for Gallardo's section 288 offense was six years, as opposed to the eight-year sentence contemplated by the parties when Gallardo entered his plea. The prosecutor opined that the People had the right to undo the plea bargain due to the change in the law, but advised the court they would not exercise that right because they felt six years was an appropriate recommendation for Gallardo's crime.

The court denied Gallardo probation after finding that factors in aggravation outweigh factors in mitigation. The court also found that the same factors that weigh against granting probation support a midterm sentence of six years in state prison. In explaining these decisions, the court found that the probation department did an excellent job in its report of identifying the relevant factors. The court also stated that it did not conduct a mechanical analysis based on the number of aggravating versus the number of mitigating factors, but considered some factors more important than others. Aggravating factors identified by the court as "overriding" were the vulnerability of the victim (rule 4.421(a)(5)); that Gallardo inflicted emotional injury (rule 4.421(a)(4)); and that Gallardo took advantage of a position of trust (rule 4.421(a)(9)).

In explaining its decision not to impose the lower term, the court found that section 1170(b)(6)(A) does not apply in this case. The court based this finding on the dearth of evidence that the molestation Gallardo "may have" suffered when he was boy contributed to his commission of the crimes against

11

Jane Doe. The court also found that imposing a midterm sentence under the circumstances presented was "in the interest of justice."

## DISCUSSION

Gallardo makes two claims of error on appeal. We address first his contention that the trial court erred by denying him probation. "A trial court has broad discretion to determine whether a defendant is suitable for probation." (*People v. Bradley* (2012) 208 Cal.App.4th 64, 89.) The "appellant bears a heavy burden when attempting to show an abuse of such discretion. [Citation.] To establish abuse, the defendant must show that, under all the circumstances, the denial of probation was arbitrary, capricious or exceeded the bounds of reason." (*Ibid*.) We find no abuse of discretion on this record.

Gallardo does not dispute that the decision to deny him probation was based on a consideration of relevant criteria listed in rule 4.414, but he contends that the court abused its discretion because it relied on "rote, general factors" inherent in the nature of Gallardo's offense, and thus failed to employ its discretion in an "individualized fashion." (Citing *People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*) [discretionary sentencing decision must be based on " 'individualized consideration of the offense, the offender, and the public interest' "].)

The record shows that the sentencing court based its decision on a consideration of all evidence submitted by the parties, and that it engaged with counsel as they argued about that evidence during a two-day hearing. Moreover, the court relied heavily on the probation report, which contains detailed discussion of Gallardo, his offense, and the public interest. Individualized factors that were highlighted in the report include that Gallardo lacks insight about the serious emotional damage that he caused, it is difficult to assess the potential danger to the community if Gallardo is not

12

imprisoned, and the method by which Gallardo persuaded his vulnerable four-year-old niece to participate in his criminal activity was egregious. Thus, the record shows that denial of probation was based on an individualized consideration of Gallardo's case.

Gallardo's other claim of error pertains to the trial court's selection of a midterm sentence. "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Rule 4.420(d).) The sentencing court has wide discretion in weighing the relevant factors. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) However, the court abuses its discretion by basing its sentencing decision on "circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Sandoval, supra*, 41 Cal.4th at p. 847.)

Gallardo does not dispute that his midterm sentence is supported by valid circumstances in aggravation. Nor does he attempt to show that the court abused its discretion by finding that aggravating factors outweigh factors in mitigation. Instead, Gallardo contends that the court misinterpreted section 1170(b)(6)(A). As discussed, the trial court found this statutory presumption does not apply because the fact that Gallardo may have been abused when he was a child was not shown to be a contributing factor in the commission of his current offenses. Gallardo contends this finding is error because (1) it "ignores" evidence in the record, and (2) it ignores "the plain reading of 'contributing factor' in considering the evidence."

First, the record clearly shows that Gallardo's disclosure of childhood sexual abuse was not ignored by the court or anyone. It was discussed in the probation report, sentencing briefs, and addendum report, all of which the

13

trial court considered before making its rulings. Moreover, at the sentencing hearing, defense counsel argued repeatedly that Gallardo's disclosure that he was molested as a child made a low-term sentence presumptively appropriate under section 1170(b)(6)(A). We find no basis for Gallardo's contention on appeal that the sentencing court ignored these arguments, when it seems clear that the court instead rejected them.

Second, and relatedly, we find no basis for concluding that the trial court misconstrued section 1170(b)(6)(A). During the sentencing hearing, defense counsel made essentially the same argument Gallardo presents on appeal—that Gallardo's comment to the police that he was molested as a child and that the experience confused him establishes a causal connection to the current offense. When defense counsel made this argument, the trial court expressed doubt about whether the molestation occurred and questioned whether the alleged incident was contributory in light of the fact that it was not even mentioned in Dempsey's report. Later, when sentence was announced, the court made an express finding that section 1170(b)(6)(A) does not apply because it is not supported by the evidence. Nothing about the court's ruling supports Gallardo's appellate theory that the court misunderstood the statute.

According to Gallardo, the trial court misinterpreted section 1170(b)(6)(A) by finding that it requires "explicit evidence" in the form of an expert opinion that the abuse suffered by Gallardo was a contributing factor to his abuse of Jane Doe, and for this reason the court "abdicated" its discretionary authority to interpret evidence in the record. We disagree with both prongs of this argument. To be sure, the court emphasized that the risk assessment makes *no* mention of a childhood sexual trauma allegedly experienced by Gallardo, and that the addendum report addressing this

14

matter does *not* find that it contributed to Gallardo's commission of the current offense. Gallardo cannot seriously dispute the relevancy of these circumstances. Although Gallardo was asked repeatedly why he committed the current offenses, he never claimed that his childhood experience contributed to his decision to sexually abuse Jane Doe, and did not think the experience was even worth mentioning to Dr. Dempsey. Then Dempsey prepared an addendum, which gave her the opportunity to identify a causal nexus, and yet she declined to do so.

Contrary to Gallardo's appellate claim, the sentencing court did not abdicate its authority to interpret the evidence before it. The defense theory, repeated on appeal, is that Gallardo's statement during his police interview compels both a finding that Gallardo is a victim of childhood sexual abuse *and* an inference that this prior experience contributed to the commission of the current offense. Rejecting this theory was an exercise of discretion and, while this court might have reached a different conclusion were it writing on a clean slate, we cannot say that the trial court abused its discretion in concluding the factual predicate for section 1170(b)(6)(A) was not established in this case.

Finally, even when section 1170(b)(6)(A) applies, "the trial court may impose a higher sentence if it finds 'the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' (§ 1170, subd. (b)(6).)" (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095.) Here, the trial court made an express finding that imposing a midterm sentence would serve the interests of justice, a finding that has not been challenged on appeal.

## DISPOSITION

The judgment is affirmed.

15

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*People v. Gallardo* (A164744)

16