Filed 5/1/26  P. v. Bettencourt CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>CURTIS DANIEL BETTENCOURT,<br><br>    Defendant and Appellant. | A171770<br><br>(Mendocino County<br>Super. Ct. No. 24CR04054) |

After a jury convicted defendant Curtis Daniel Bettencourt of one count of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)),[1] the trial court sentenced him to the upper term of four years in state prison.  Defendant's sole contention on appeal is that the court abused its discretion in sentencing by failing to consider his mental health and substance abuse issues.  We affirm.

### BACKGROUND

In the early afternoon hours, L.K. was on his daily walk in Ukiah, when a shirtless man, who he later identified as defendant, blocked his way and called him "bad words."  When L.K. attempted to go around defendant, defendant once again blocked his way.  Defendant then picked L.K. up and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

threw him to the ground.  L.K. had kidney and pancreas transplants, and he was unable to stop defendant.  Once L.K. was on the ground, defendant punched him in the face, "something really bad."  L.K. had never seen defendant before.  When some people came to help L.K., defendant ran away.

One witness, driving in his car, saw "a shirtless man," who he subsequently identified as defendant, "come out from where the Redwood Trail is behind" some apartment buildings and confront an elderly man, L.K.  Defendant "had a serious face and his body indicated that the situation might escalate to something violent or aggressive."  Defendant walked toward L.K., placing himself directly in L.K.'s path.  When L.K. tried to go around defendant, defendant pushed him to the ground and began kicking him.  The witness parked his car so he could help the victim.

City of Ukiah Police Sergeant August Kinney was on routine patrol around 2:00 in the afternoon when he received a dispatch about an assault that had just occurred near East Gobi Street.  The witness flagged Kinney down, and Kinney observed the victim, L.K., with "some traumatic conditions to his head," some "lacerations."  L.K. had a "contusion about half the size of a baseball" on the top of his head, with a "pretty good size knot or lump forming on the back" of his head, "and in the very center of that knot was a laceration."  He had an additional laceration that was bruising and "looked to be early stages of contusions."  Kinney called for medical assistance, and after speaking to the victim and witnesses, he broadcast defendant's description, and a "short time later," another officer responded that he had located a possible suspect about three blocks away.  Kinney also requested an officer obtain the video footage from the nearby animal hospital, which Kinney knew had multiple cameras facing the location.

2

City of Ukiah Police Officer Saul Perez's supervisor alerted Perez to the suspect's description: Black male, shirtless, last seen walking toward the nearby Safeway grocery store. Perez was near the grocery store and saw a subject who matched the description and who Perez recognized from prior contacts. He parked his patrol car, activated his body-worn camera, and walked toward defendant calling him by name. Perez was in uniform. When defendant continued walking, Perez told him to stop, that he needed to talk to him, and that he was being detained. Defendant ignored Perez's commands. Perez then jogged toward defendant, while alerting other officers of his location. At that point, defendant "abruptly stopped" and faced Perez. He had some clothing in his left hand and took a "bladed" stance, so he could "fight or flight and to engage or run away from me." Defendant said "something to the effect, 'I don't have to fucking listen to you.'" Officer Perez had his taser in his hand and warned defendant he "was utilizing" it. Perez then tased and arrested him.

The Mendocino County District Attorney filed an information alleging one count of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)—count 1) and one count of resisting an officer (§ 69, subd. (a)—count 2). The information further provided notice of several circumstances in aggravation: the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1));[2] the victim was particularly vulnerable (rule 4.421(a)(3)); defendant threatened the witness, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or legally interfered with the judicial process (rule 4.421(a)(6)); defendant has or will be convicted of other crimes for which

---

[2] All further rule references are to the California Rules of Court.

consecutive sentences could have been imposed but for which concurrent sentences are being imposed (rule 4.421(a)(7)); defendant has engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); defendant's prior convictions as an adult or sustained petitions as a juvenile are numerous or of increasing seriousness (rule 4.421(b)(2)); defendant has served a prior term in state prison (rule 4.421(b)(3)); and defendant's prior performance on probation was unsatisfactory (rule 4.421(b)(5)).

The jury found defendant guilty on count 1 (assault) and not guilty on count 2 (resisting an officer).

Defendant waived jury trial on the aggravating factors. The district attorney withdrew one alleged aggravating factor (rule 4.421(a)(7)), and the court found true the remaining aggravating factors, except one (rule 4.421(a)(6)).

In his sentencing memorandum, defendant asked that the court grant probation for a two-year period. As factors in mitigation, he pointed to his mental health history, which included diagnoses for Schizophrenia and several substance use disorders. He asserted his mental health and disorder conditions "contributed to his conduct in this case." Additionally, he claimed his substance use "aggravates his mental health disorders," which also contributed to his conduct. Defendant alternatively asked the court, if it denied probation, to impose the low term, pursuant to section 1170, subdivision (b)(6), in light of these mitigating factors.

Defendant attached to his sentencing memorandum a medical evaluation report prepared by Dr. Kathryn Medici. Medici stated defendant "did not know his diagnosis, but later reported he believes he has schizophrenia," which he thought was "caused by his drug use." She concluded he met the "criteria for schizophrenia and amphetamine, alcohol,

4

and marijuana use disorder." She further opined the "symptoms of [defendant's] mental disorder contributed to his criminal behavior. Specifically, [defendant] was under the influence of substances at the time of his arrest(s) and was experiencing symptoms of schizophrenia including thought disorganization and hallucinations."

In his interview with the probation officer, defendant had expressed a desire to receive probation. Despite being confronted with his "extensive criminal history and past poor performance on probation," defendant had been "adamant he would be successful." He also stated he had been "diagnosed with schizophrenia and 'drug-induced psychotic disorder' " and prescribed medication. However, he could not recall when he had been diagnosed or what medication he had been prescribed. Defendant had stated that from age 14 to around 33, he had smoked methamphetamines "a couple of times per week," but since 2023, he had not used the substance. He denied any history of childhood abuse or neglect.

The probation report listed the factors in aggravation found true by the trial court, and identified one factor in mitigation, "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime." (Rule 4.423(b)(2).) It did not identify as a mitigating factor that "defendant experienced psychological, physical, or childhood trauma, including, but not limited to abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime." (Rule 4.423(b)(3).)

The probation officer commented, "The defendant suffers from poly-substance addiction and mental health issues, which could have contributed to the instant offense. However, he has been aware of these issues for years and has been provided several opportunities to address them via court-ordered supervision." (Boldface omitted.) Thus, while his "criminality may

5

be the result of his poly-substance abuse and mental health issues, there is not a high likelihood that he would respond favorably to treatment; given his history of non-compliance." Probation therefore recommended the aggravated term of four years, as a "prison sentence seems to be in the best interest of the public" and would "provide an opportunity for the defendant to address his issues in a more controlled environment."

At the start of the sentencing hearing, the court noted it had read and reviewed "not only the probation report but also the defense sentencing memorandum, as well as the exhibits attached thereto, which did include some of [defendant's] psychological history." The court then heard from counsel and defendant.

Defense counsel began by "highlighting" defendant's mental health and "addiction history" as "definitely" being "a contributing cause to the incident that occurred." Counsel indicated this would "overcome the presumption of ineligibility for probation" and submitted. Defendant subsequently told the court he was "going through a hard time right now," that his mother had just passed away, and he was "battling, like, trying to stay, like, sane in, like, prison. Well, in custody right now." He was dealing with his "mental health illnesses due to incarceration and stuff like that," and he was "willing to participate in whatever will help [him] out" and avoid prison. After defendant spoke, his counsel acknowledged defendant's "extensive" criminal history but reiterated, "I think that's more of an indication of the mental health and addiction problems he's been struggling with since he was a teenager."

The district attorney urged the court to follow the probation department's recommendation and impose the aggravated term of four years in prison.

The court then stated, "I was the judge for [his] trial, and I saw the video of the assault. [¶] And as I said, I read the probation report, and I heard from [defense counsel] just this morning, and I still can't determine why that assault occurred. I have no idea. [¶] All I know is that someone, an old man who couldn't defend himself, was walking down the street and was attacked repeatedly, and the old man couldn't defend himself and didn't even try. He was down on the ground while the assault continued, and I still don't know why that happened. [¶] . . . [¶] So that's where I'm at, Mr. Bettencourt. I just don't know why it happened. And afterwards, we had a court trial on the aggravators." The court observed it had found there was great harm, the victim was "absolutely vulnerable," the conduct presented a danger to the victim or "quite frankly, . . . any person unlucky enough to be in that area," there were prior convictions, dating back to 2005, defendant "never successfully completed probation, not once," defendant had been "sent to prison in 2021, only released in 2023," and there "is no dual use of these facts, as the defense correctly points out." The court continued, leading up to the instant case and starting in February 2024, defendant's record showed "every few days [defendant] was arrested," from "using methamphetamine, refusing to leave a store, stealing from a store," just a "regular pattern, . . . culminating in this instance."

The court denied probation, "because I don't think that he's going to complete it because he never has before. I think that the aggravating factors are more than enough to merit the upper term. I am going to select the upper term. [¶] I can't see any other alternative, Mr. Bettencourt. Because I think probation had it right when they wrote the community safety outweighs your needs, and that's all you wanted to talk about at sentencing, how stressful this is for you. . . . [¶] . . . I've only heard you talk about yourself at

sentencing today and not once about the old man who was beaten by the railroad tracks." The court thus imposed the upper term and addressed various fines and fees.

**DISCUSSION**

### *Section 1170, subdivision (b)(6)(A)*

Defendant maintains the trial court abused its sentencing discretion by failing to consider his mental health and substance use disorders as "factors in mitigation" under "the statutory presumption for a low term" set forth in section 1170, subdivision (b)(6)(A).

Section 1170, subdivision (b)(6)(A) provides in relevant part: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." Defendant maintains "[m]ental illness falls within the ambit" of "psychological trauma" and therefore evidence of mental illness, such as schizophrenia, triggers this mitigating factor.

While mental illness may be a factor in the circumstances that trigger the lower term sentencing presumption under section 1170, subdivision (b)(6), mental illness, alone, is not enough to do so. (*People v. Tilley* (2023) 92 Cal.App.5th 772, 777 (*Tilley*); *People v. Banner* (2022) 77 Cal.App.5th 226, 241 (*Banner*) ["psychological trauma based on mental illness *may be* a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6)," but "mental illness alone" does not "qualif[y] for the lower term presumption"], italics added.) Rather, "[p]sychological trauma must

8

attend the [mental] illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)."[3] (*Banner*, at p. 241.)

As indicated by the language of section 1170, subdivision (b)(6)(A), "psychological trauma" is something experienced by the defendant akin to "abuse, neglect, exploitation, or sexual violence."  The American Psychological Association Dictionary of Psychology defines trauma as "*any disturbing experience* that results in significant fear, helplessness, dissociation, confusion, or other disruptive feelings intense enough to have a long-lasting negative effect on a person's attitudes, behavior, and other aspects of functioning."  (<https://dictionary.apa.org/trauma> [as of Apr. 30, 2026], italics added; see <https://www.psychologytoday.com/us/basics/trauma> [as of Apr. 30, 2026] [Psychological trauma is a person's experience of emotional distress resulting from an event—a one-time occurrence or a series of occurrences—that overwhelms the capacity to emotionally digest it].)  Noting that "the statute's plain language states trauma is '*not* limited to abuse, neglect, exploitation, or sexual violence,'" the court in *Banner* rejected the People's argument that the statute applies only "to 'experiences' other than mental illness." (*Banner, supra*, 77 Cal.App.5th at p. 241.)  Nonetheless, as set forth above, the court confirmed the statute requires more than a showing of mental illness or, as the case here, a mental illness and substance use disorder, namely a showing that the defendant suffered psychological trauma as a result of his mental illness or disorder that contributed to his

---

[3] We note the rules of court separately identify as mitigating factors that the "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime" (rule 4.423(b)(2)) and that the "defendant experienced psychological physical, or childhood trauma, including but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime" (rule 4.423(b)(3)).

commission of the crime before the lower term presumption is triggered. (*Ibid.*)

Here, defendant made a sufficient showing that he suffers from schizophrenia and amphetamine, alcohol, and marijuana use disorders. But he made no showing that his mental illness and/or substance use disorders caused "psychological trauma" that "contributed to the crime" of which he was convicted. In other words, while the evidence may have established, as suggested in the probation report, "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime" (rule 4.423(b)(2)), it did not establish that his mental illness and substance use disorders caused "psychological trauma" that was a "contributing factor" to his crime—the something more required under section 1170, subdivision (b)(6)(A) to trigger presumptive entitlement to the low term.

Accordingly, on this record, it cannot be said the trial court abused its discretion in sentencing him to the high term. (See *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994 [on review of "the probation reports, appellant's sentencing memorandum, the letters submitted on her behalf, and the arguments at the sentencing hearing" appellate court "found no clear indication appellant's youth was a contributing factor in the 2016 offense"; and while "it is possible facts or arguments could have been developed that would have constituted such an initial showing, . . . there is no basis for this court to conclude the trial court's failure to expressly consider the lower term presumption requires a remand"].)

For the first time in his reply brief on appeal, defendant "contends that his mental health issues, compounded by the stressors of his substance abuse, living circumstances, history of conflicts with others and the law, his childhood without a father and schooling of special education through

10

juvenile camp facilities, explained in the assessment provided to the sentencing court, [citation], reflect the very 'psychological trauma' contemplated by the Legislature in enacting section 1170, subdivision (b)(6), as amended by Assembly Bill [No.] 124 (Stats 2021, ch. 695) and Senate Bill [No.] 567 (2021–2022 Reg. Sess.)."

Defendant did not advance this fact-laden argument in the trial court. Rather, while he cited section 1170, subdivision (b)(6)(A) in his sentencing memorandum, he pointed only to the evidence that he suffers from a mental illness and several substance use disorders and argued that evidence was sufficient to trigger a presumptive low term. However, as we have discussed, that evidence and the argument based on it were not sufficient, as they did not establish that defendant's mental illness and substance use disorders caused "psychological trauma" that contributed to the crime he committed. Defendant cannot now, for the first time on appeal, advance a different factually-based theory or argument. (See *Tilley, supra*, 92 Cal.App.5th at p. 778 [where defendant "did not seek the lower term based on section 1170, subdivision (b)(6); object to the imposition of the middle term; or argue that [he] suffered any psychological trauma as a result of mental illness" his claim based on section 1170, subdivision (b)(6)(A) was forfeited].)

Nor did defendant raise his recrafted argument in his opening brief on appeal; instead, he advanced it for the first time in his reply brief. He has therefore waived the argument, as well. (See *People v. Gonzalez* (2020) 57 Cal.App.5th 960, 978 [it is "well established that arguments may not ordinarily be raised for the first time in a reply brief"]; *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 ["In his reply brief, Taylor raises other arguments for the first time. Taylor has forfeited these tardy arguments."]; 9 Witkin, Cal. Procedure (6th ed. 2026) Appeal, § 751 ["points raised in the reply brief

11

for the first time will not be considered, unless good reason is shown for failure to present them before"].)

In short, because defendant has failed to address the distinction and identify evidence in the record that he experienced "psychological trauma" based on his mental illness, he has not demonstrated any abuse of discretion under section 1170, subdivision (b)(6)(A).

### *Rule 4.423(b)*

Defendant alternatively argues, citing to rule 4.423(b)(2), that "even if [his] supporting data does not support a finding of 'psychological trauma,' the mental health and substance abuse issues he suffers . . . should have been adequately weighed and considered in mitigation before imposing an aggravating term." He asserts that "where trauma otherwise would not mandate a low term, the Legislature directed that the middle term should be the presumption," and the sentencing court "may only depart from this presumption if it finds that the aggravating circumstances outweigh the mitigating circumstances so that imposition of the presumptive term would be contrary to the interest of justice."

Rule 4.423(b)(2), lists as a mitigating factor "relating to the defendant" that "[t]he defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime." (Rule 4.423(b)(2).)

Defendant acknowledges that, on a silent record, a trial court is presumed to have understood and properly applied its sentencing discretion, but contends the record is not silent here. He asserts the record in this case affirmatively demonstrates the court failed to adequately consider his mental health and substance abuse issues. As proof, he maintains that while there was an abundance of evidence (his sentencing memorandum, the psychological evaluation, and the probation report) that his "mental health

12

issues, exacerbated by substance abuse, contributed to the assault in this case," the trial court nevertheless stated it " 'still [did not] know why [the assault] happened.' " According to defendant, this comment by the court "reflects an implicit disregard and failure to consider [his]" mental health and substance abuse issues "as factors contributing to the offense and/or in mitigation for purposes of sentencing."

"To prove an abuse of discretion, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' " (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

Contrary to defendant's take on the record, it does not reflect any disregard by the trial court of defendant's mental health condition and substance use disorders. At the outset of the sentencing hearing, the trial court stated it had read and reviewed the probation report, defendant's sentencing memorandum, and the attachments, which included defendant's psychological evaluation. It then heard from defense counsel who emphasized defendant's mental health condition and substance use disorders.

That the court pondered as to the "why" of defendant's beating of a hapless victim unknown to defendant, hardly suggests it discounted defendant's mental health condition and substance use disorders as reducing his "culpability for the crime" (rule 4.43(b)(2)). Rather, it reasonably reflects the lack of any evidence that defendant's mental health condition and substance use disorders "was a contributing factor in the commission of [his]

13

offense," (§ 1170, subd. (b)(6)) let alone that psychological trauma attended those conditions and that that trauma contributed to the offense. (*Id.*, subd. (b)(6)(A).) Although Dr. Medici opined defendant was experiencing "thought disorganization and hallucinations," neither she nor counsel explained how defendant's schizophrenia-related hallucinations contributed to his commitment of the offense. For example, we do not know if the hallucinations caused defendant to perceive the victim as an attacker, or if auditory delusions prompted defendant to attack the victim. And although defendant spoke at the sentencing hearing, he did not provide any insight whatsoever as to his offense.

In short, the trial court was well-aware of defendant's diagnosed mental health and substance use disorders but was provided no evidence that these caused defendant to commit the crime of which he was convicted. We therefore reject defendant's assertion that the trial court's musing as to "why" defendant committed the brutal attack demonstrates the court disregarded and failed to consider his mental health and substance use disorders "as factors . . . in mitigation for purposes of sentencing."

Defendant also points out the record "did not reflect the sentencing court made a finding that [his] mental health and substance abuse issues were inapplicable or applicable to the acts underlying his conviction." However, " '[s]entencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms." ' " (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) And, the court need not state reasons for minimizing or disregarding circumstances in mitigation. (*Ibid.* ["trial court need not explain its reasons for rejecting mitigating factors"]; *People v. Salazar* (1983) 144 Cal.App.3d 799, 813.)

Furthermore, the record amply demonstrates the trial court paid attention to the asserted mitigating and aggravating circumstances identified in the defendant's sentencing memorandum and probation report, and by counsel during argument. It found, however, that aggravating factors far outweighed any asserted mitigating factors. Indeed, the court expressly found "aggravating factors are more than enough to merit the upper term."

In sum, the record does not affirmatively demonstrate that the trial court misunderstood its sentencing discretion or abused it. To the contrary, the record demonstrates a sound exercise of its discretion.

## DISPOSITION

The judgment is affirmed.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Langhorne Wilson, J.

A171770, People v. Bettencourt